Emmanuel K. OHEMENG, Plaintiff,

v.

DELAWARE STATE COLLEGE, William C. Dix, Richard Barros, Lee Kallos, Cora Selby, Helen Kirch, James H. Williams, William Davis, James C. Hardcastle, Arthur Richardson Luna Mishoe, Willard Speakman, III, Individually and as Trustees, Delaware State College; James E. Lyons, Individually and as former Vice President and Academic Dean, Delaware State College; Harriet R. Williams, Individually and as former Interim Vice President and Academic Dean, Delaware State College; and Raymond J. Grandfield, Individually and as Chair of the Department of Economics and Business Administration, Delaware State College, Defendants.

Civ. A. No. 85–748–JRR.

United States District Court, D. Delaware.

Oct. 2, 1986.

---

Leonard L. Williams, Wilmington, Del., for plaintiff.

Nicholas H. Rodriguez, of Schmittinger & Rodriguez, Wilmington, Del., for defendants.

ROTH, District Judge.

Plaintiff Emmanuel K. Ohemeng has brought an employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, against Delaware State College and several individual members of the Board of Trustees and present or former deans and presidents of the college. Before the Court are defendants' motion for judgment on the pleadings or, in the alternative, motion for summary judgment. Because the record in this matter contains material outside of the pleadings, the Court will view defendants' motion as one for summary judgment.

Defendants contend that recovery under either of the statutes relied on by the plaintiff is barred by the applicable statute of limitations. Moreover, as to plaintiff's § 1981 claim, defendants also contend that Ohemeng has failed to state a claim upon which relief can be granted. We find that there are genuine issues of material fact concerning each of plaintiff's claims, and, consequently, we deny defendants' motion for summary judgment.

I. FACTS.

Plaintiff Ohemeng is a black naturalized American citizen. He came to the United States from Ghana in 1959. Ohemeng has several degrees: a Bachelor of Arts, a Masters in Business Administration and a Juris Doctor. Prior to his retention as an assistant professor of business administration at Delaware State College, Ohemeng had taught for ten years at four post-secondary institutions. Plaintiff received a teaching appointment at Delaware State College on August 28, 1980, which was renewed for the 1981–1982 and 1982–1983 school years.

In addition to naming Delaware State College as a defendant in this action, plaintiff Ohemeng also seeks redress from eleven members of the college's Board of Trustees, both in their individual and repre-

sentative capacities, and from James E. Lyons, individually and as the college's former Vice President and Academic Dean; Harriet R. Williams, individually and as the college's former Interim Vice President and Academic Dean; and Raymond J. Grandfield, individually and as the Chair of the college's Department of Economics and Business Administration. Defendants Lyons, Williams and Grandfield are all native-born American citizens.

During the period from 1981 to 1983, Ohemeng was evaluated by the Economics and Business Administration Department chairman on three occasions. The first two evaluations were conducted on January 25, 1981, and April 25, 1983, by Chair John Robert Price who rated plaintiff as excellent in almost every category of performance. Price noted, however, that plaintiff needed to acquire an additional degree before he could be promoted from an assistant professor and that plaintiff needed more years of teaching experience before he could be considered for tenure. Price also commented that the plaintiff had experienced a few disputes with students concerning grades that required the department chairman's attention.

On April 28, 1983, Ohemeng signed a letter from Delaware State College appointing him an assistant professor of economics and business administration for the 1983–1984 school year. Ohemeng claims that at the time he did not notice the letter's asterisked provision that stipulated the contract was terminal after one year. Ohemeng avers that when he did become aware of the termination provision in September, 1983, he approached department Chair Price who assured him he would not be terminated from the teaching position. Chair Price died a month later and was replaced by Raymond J. Grandfield.

The third evaluation was conducted by the department's new Chair Grandfield on October 31, 1983, several months after plaintiff had entered into the one-year terminal contract. Chair Grandfield gave plaintiff high marks in all categories of performance but noted that because plain-tiff was hired pursuant to a terminal contract, Grandfield was not in a position to recommend that plaintiff be promoted, tenured or reappointed as an assistant professor.

The Economics and Business Administration Department held faculty meetings on February 14, 1984, and March 6, 1984, to discuss, respectively, the Fall 1984 and Spring 1985 schedule of courses. Plaintiff was assigned to teach four undergraduate courses for each of those semesters. Plaintiff argues that the specific teaching assignments for the 1984–1985 school year nullified and revoked the one-year terminal provision of his contract for the 1983–1984 school year.

Subsequent to these faculty meetings, plaintiff was informed on March 16, 1984, pursuant to a letter from Harriet Williams, Interim Vice President and Dean of Academic Affairs, that the Board of Trustees for Delaware State College had on March 8, 1984, determined that Ohemeng would not be reappointed for the 1984–1985 academic year. During the course of grievance procedures that Ohemeng brought under a collective bargaining agreement, the college explained that it had dismissed Ohemeng because he did not have a doctoral degree and, thus, did not meet the long term needs of the college.

Three months later, in the June 20, 1984 issue of *Chronicle of Higher Education*, Delaware State College placed advertisements seeking two assistant professors, one who held a JD and MBA or LLM and another who held an MBA, CPA and, preferably, a doctoral degree. Ohemeng held both a JD and MBA at the time of his termination from Delaware State College. These are the exact qualifications sought by the defendant in one of the advertised positions and are not unsimilar to the qualifications sought in the second. The College contends it sought two applicants with doctoral degrees in order to initiate an MBA program, but neither person hired to fill those positions had a doctoral degree. In fact, the first person hired had an LLM but no MBA while the second person had a

CPA and MS, not an MBA. In short, neither the advertisement nor the persons hired to fill the new positions would appear to support defendants contention that Ohemeng was dismissed because he did not have a doctoral degree.

Plaintiff charges that the open positions described in the two advertisements triggered the realization that he had been terminated for discriminatory reasons. Ohemeng avers that during his three years at Delaware State College he had been derisively referred to as "the African teacher" by defendants Lyons and Grandfield, he had been denied an office telephone and he had not been designated to attend professional meetings or conferences. Ohemeng also alleges that Delaware State College, under similar circumstances, terminated other assistant professors who were non-native Americans and/or non-white citizens. Plaintiff seeks as relief to be reinstated in the position he would have held in the absence of alleged discriminatory conduct, compensation for back pay, benefits and interest, compensation for mental anguish, punitive damages, and costs and attorney's fees.

Defendants deny the allegations of discriminatory conduct and contend that plaintiff has no basis either in law or fact to pursue this litigation.

## II. STANDARDS FOR SUMMARY JUDGMENT.

The Federal Rules of Civil Procedure provide that a party is entitled to summary judgment as a matter of law where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c).

The party moving for summary judgment has the burden of showing the absence of a genuine issue as to any material fact, and the Court shall view any material offered in a light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In a summary judg-

ment proceeding, the Court shall not decide the issues of material fact, but rather the Court shall only determine whether a dispute as to a material fact exists. *Toebelman v. Missouri-Kansas Pipe Line Co.*, 130 F.2d 1016, 1018 (3d Cir.1942). The Court shall resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Id.*

## III. ANALYSIS.

Defendants' basis for moving for summary judgment is twofold. First, defendants argue that each of plaintiff's claims is time-barred by the applicable statute of limitations. Additionally, as to plaintiff's § 1981 claim, defendants assert that plaintiff has failed to state a claim upon which relief can be granted.

### A. *A Disputed Material Fact Prevents A Summary Judgment Holding That Plaintiff's Claims Are Time-Barred.*

In the pleadings, defendants set forth as an undisputed fact the date they deem is the appropriate accrual date for plaintiff's causes of action. Defendants contend that their calculation of the periods of limitation to be applied to the accrual date is also an undisputed fact. The Court rejects defendants' appraisal of the undisputed nature of the material facts and of the law to be applied in this matter.

#### 1. *Plaintiff's Title VII Claim.*

Defendants' argument that the statute of limitations bars plaintiff's 42 U.S.C. § 2000e claim focuses primarily on pinpointing the date that plaintiff's cause of action accrued. The Supreme Court has held that in determining the accrual date for a Title VII employment discrimination action in a college setting such as this, the "proper focus is upon the time of the *discriminatory* acts, not upon the time at which the *consequences* of the acts became most painful." *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209

[9th Cir.1979]). Defendants rely heavily on the Supreme Court's language in *Ricks*, ostensibly because there is a strong factual similarity between the allegations made by Ohemeng and the circumstances in *Ricks*.

The Court in *Ricks* held that the date the plaintiff was offered a one-year terminal contract triggered the running of the time period within which plaintiff could bring a Title VII action. This Court, however, finds that defendants' reference to isolated passages from the *Ricks* opinion glosses over important factual distinctions between *Ricks* and this cause of action. These distinctions are key in that the Supreme Court recognized that the *Ricks* outcome could vary significantly depending on an action's particular facts.

In *Ricks*, the plaintiff, a black Liberian, consistently had been denied a recommendation of tenure: first, in February, 1974, by the Delaware State College Faculty Senate tenure committee; then in early March, 1974, by the Faculty Senate; and, finally, on March 13, 1974, by the Board of Trustees. *Ricks*, 449 U.S. at 252, 101 S.Ct. at 501.

Plaintiff Ricks subsequently filed a complaint with the college grievance committee. On June 26, 1974, the college Board of Trustees offered Ricks a one-year terminal contract due to expire on June 30, 1975. Ricks signed that contract on September 4, 1974. On September 12, 1974, the Board of Trustees denied Ricks' grievance complaint concerning his denial of tenure.

Ricks did not seek further relief until April 4, 1975, when he filed a complaint with the Equal Employment Opportunity Commission (EEOC). The EEOC transferred the complaint to the state fair employment practices agency which then waived jurisdiction and returned the complaint to the EEOC on April 28, 1975. About two years later, the EEOC sent Ricks a "right to sue" letter. Ricks filed his Title VII action in the Delaware District Court on September 9, 1977.

The Supreme Court decided that the appropriate accrual date for Ricks' Title VII and § 1981 claims was June 26, 1974, the date that the Board of Trustees officially offered Ricks a one-year terminal contract. The Court declined to find that the date of the discharge was the accrual date of the discriminatory acts because plaintiff did not allege discriminatory conduct that continued until, or occurred at the time of, the actual termination of his employment. The Court explained:

> In order for the limitations periods to commence with the date of discharge, Ricks would have had to allege and prove that the manner in which his employment was terminated differed discriminatorily from the manner in which the College terminated other professors who also had been denied tenure.

*Ricks*, 449 U.S. at 258, 101 S.Ct. at 504.

The Court found that Ricks, like all unsuccessful tenure applicants, had been offered a one-year terminal contract. Thus, the Court held that the denial of tenure was the only discriminatory act alleged by Ricks, even though the consequences of the denial were not felt until a year later when the terminal contract expired.

The Court, however, recognized that the factual circumstances in *Ricks* and the determination of that particular accrual date represented only one of many scenarios.

> Complaints that employment termination resulted from discrimination can present widely varying circumstances. In this case, the only alleged discriminatory act is the denial of tenure sought by a college professor, with the termination of employment not occurring until a later date. The application of the general principles discussed herein necessarily must be made on a case-by-case basis.

*Id.* at 258, n. 9, 101 S.Ct. at 504, n. 9.

In concluding that June 26, 1974, was the most apt accrual date, the Court's majority referred to the college's consistent denial of tenure to Ricks as "an unbroken array of negative decisions." *Id.* at 262, 101 S.Ct. at 506. This Court finds that the facts, as alleged by Ohemeng, are susceptible of a reasonable inference by plaintiff that even though he had entered a terminal

contract, defendants were offering him employment beyond the expiration of that contract. Unlike Ricks who had experienced an unbroken array of negative decisions, Ohemeng was offered a terminal contract, then was told by the department chair to ignore the terminal provision in his contract, later was assigned courses for the two semesters following his contract's expiration and finally, prior to the end of the school year, was notified in writing that the college's Board of Trustees was reaffirming the *terminal* aspect of his contract.

This Court finds that in light of defendants' seesaw representations to Ohemeng about his teaching future with the college, plaintiff reasonably could have believed that the college's conduct subsequent to the offering of the one-year contract had modified its expiration term. The Court is unpersuaded by the defendants' wooden application of the principles enunciated in *Ricks* and refuses to find as a matter of law that the accrual date for Ohemeng's Title VII claim was April 28, 1983, the date he entered into the one-year terminal contract.

Under federal law, the limitations period for both Title VII and § 1981 claims begins to run "when the plaintiff knows or reasonably should know that the discriminatory act has occurred." *McWilliams v. Escambia County School Board*, 658 F.2d 326, 330 (5th Cir.1981). Upon viewing the facts in this case, in a light most favorable to the plaintiff, a jury may reasonably concur with plaintiff's allegation that he did not know he was being discriminated against until about June 20, 1984, when he saw the college's job advertisements seeking teachers with credentials similar to his own. The defendant college purportedly terminated Ohemeng in order to upgrade its teaching staff. Ohemeng, without additional graduate degrees, allegedly did not meet the college's needs. Plaintiff charges that the college's reason for terminating him is a pretext for discriminatory conduct because at least one of the advertised positions was for a teacher with the same credentials as Ohemeng.

The June 20, 1984, accrual date for plaintiff's Title VII action falls within the statute of limitations period prescribed by 42 U.S.C. § 2000e–5(e) and its complimentary regulations in 29 C.F.R. § 1601 et seq. The statute requires that the plaintiff file his Title VII complaint with the EEOC within 180 days from the date the alleged discriminatory act occurred. 42 U.S.C. § 2000e–5(e). If the plaintiff initiates proceedings with a state agency authorized to act on employment discrimination claims, then the state agency has exclusive jurisdiction over that claim for 60 days and the EEOC must defer action on that complaint until the 60 days have passed. 29 C.F.R. § 1601.13(a)(4)(ii). Thus, plaintiff may have 240 days for his complaint to reach the EEOC if he has also filed a complaint with the state employment agency. Delaware is a deferral state because it has empowered a state agency to handle employment discrimination claims. 19 *Del.C* § 710 et seq. Charges that are not timely filed with the state agency must be filed with the EEOC within 300 days of the last alleged act of discrimination or within 30 days of receipt of notice from the state agency that the proceedings have been terminated, whichever occurs first. 42 U.S.C. § 2000e–5(e).

Plaintiff Ohemeng filed his Title VII complaint with the Anti-Discrimination Section of the Delaware Department of Labor on December 11, 1984. The state agency transferred the plaintiff's claim to the EEOC on December 14, 1984. Assuming *arguendo* that June 20, 1984 was the accrual date and using 180 days as the most restrictive of the time periods the Court could adopt, the Court finds that plaintiff timely filed his complaint with the EEOC. A filing date of December 14, 1984, is within 180 days of June 20, 1984. The Court need not develop further the obvious results of applying a 240–day or a 300–day time period to a June 20, 1984, accrual date.

Should the finder of facts subsequently determine that a date earlier than June 20, 1984, is the appropriate accrual date, then

the Court will modify its statute of limitations analysis appropriately. Presently, however, we find that the 180 day period is adequate for the purpose of denying defendants' motion for summary judgment as to Ohemeng's Title VII claim.

### 2. *Plaintiff's Section 1981 Claim.*

 Defendants contend that Ohemeng's § 1981 claim is time-barred because plaintiff did not file suit within two years of the alleged discriminatory employment practice. To prevail on this argument, defendants must convince the Court that plaintiff's cause of action accrued on April 28, 1983, the date the employment contract was offered and that the present two year statute of limitations for § 1981 actions is to be applied retroactively. Plaintiff argues that at the time his cause of action arose the statute of limitations applicable to § 1981 claims, as determined by the Third Circuit, was the time limitation for a breach of contract action. *Meyers v. Pennypack Woods Home Ownership Association,* 559 F.2d 894 (3d Cir.1977). Before 1985, a plaintiff in Delaware was required to file a § 1981 claim within three years of the unfavorable employment decision. *Ricks,* 449 U.S. at 255, n. 5, 101 S.Ct. at 502 n. 5 (1980).

In 1985, the Supreme Court held that the statute of limitations period for all § 1983 claims would be that of the forum state's personal injury statute of limitations. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985). The Third Circuit subsequently held that this same § 1983 period of limitation also applies to § 1981 claims. *Goodman v. Lukens Steel Co.,* 777 F.2d 113, 120 (3d Cir. 1985). In Delaware, a personal injury action must be filed within two years of the date of injury. 10 *Del.C.* § 8119.

The standards for retrospective application of a change in the statute of limitations period were set out by the Supreme Court in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 196 (1971). The Court applied a three part test:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

The first factor to consider is whether the statute of limitations ruling in *Garcia* "establishes a new principle of law either by overruling clear past precedent on which the litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Chevron* 404 U.S. at 106, 92 S.Ct. at 355. The Third Circuit ruled in *Smith v. City of Pittsburgh,* 764 F.2d 188, 195 (3d Cir.1985), that where there is no clear precedent as to what the limitations period is, a later Supreme Court decision on that issue "cannot be said to have overruled clear past precedent on which the litigants may have relied."

In *Smith,* Judge Sloviter found that the *Garcia* ruling should apply retroactively to the plaintiff's § 1983 claim for unconstitutional termination of employment. The important distinction between the *Smith* case and this action is that the Court's decision in *Smith* was based largely on the lack of any clearly defined limitations period in Pennsylvania. Consequently, the plaintiff had no reasonable justification for relying on a time period of more than two years before filing his suit in Pennsylvania. Plaintiff Ohemeng filed this suit in Delaware, and the question is whether there was any clear precedent in Delaware, at the time Ohemeng filed his action, that the

statute of limitations period for § 1981 claims was longer than the two year personal injury period which now applies.

The case law from this District makes it clear that the three year time limitation for breach of contract actions was consistently applied to both § 1981 and § 1983 claims in Delaware. *Burris v. Wright,* 459 F.Supp. 157, 159 (D.Del.1978); *Guilday v. Department of Justice,* 451 F.Supp. 717, 722 (D.Del.1978); *Marshall v. Electric Hose & Rubber Co.,* 68 F.R.D. 287, 293 (D.Del. 1975). It was also held as early as 1975 that claims made under § 1981 and § 1983 were so similar that there was no significant reason for differentiating between them for purposes of the statute of limitations. *Marshall* at 293. The Third Circuit reiterated this point ten years later in *Goodman v. Lukens Steel Co.,* 777 F.2d at 120. As a result, claims brought under § 1983 would have the same precedential value, for purposes of the statute of limitations, as those brought under § 1981. The net result provided the plaintiff in this action with a reasonable justification for relying on the three year limitations period. Therefore, we find that the first factor for nonretrospective application here of the *Garcia* rule is satisfied.

The next consideration under *Chevron* is to weigh "the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." 404 U.S. at 106–07, 92 S.Ct. at 355–56 (quoting *Linkletter v. Walker,* 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 [1965]). The Supreme Court in *Garcia* outlined several purposes for its ruling. First, the Court found the analogy to tort the most compelling in building a § 1983 action. 105 S.Ct. at 1948. Second, the Court noted that one universal limitation period would minimize the risk that a particular statute of limitations would fail to properly serve federal interests which § 1983 was intended to address. *Id.* at 1949. The third and most important purpose, as expressed by the Third Circuit in *Smith,* was to further "the federal interests in uniformity, certainty and the minimization of unnecessary litigation." *Smith,* 764 F.2d at 195, 196 (quoting *Wilson v. Garcia,* 105 S.Ct. at 1947).

Judge Sloviter found in *Smith* that retroactive application of the Pennsylvania two year personal injury limitations period would serve these important federal interests of uniformity and minimization of litigation while not undermining the plaintiff's opportunity to vindicate his rights. *Smith* at 196. However, this finding was limited by the Court's further explanation that the *Garcia* policies did not "militate clearly in favor of retrospective application" even though they did not necessarily "militate against such application" either. *Id.*

Retroactive application in this case of the two year personal injury limitations period would not be helpful to the interests of uniformity. There had been uniformity in Delaware prior to *Garcia* but the Supreme Court in *Garcia* has instructed us to change the rule we had applied. Uniformity will be our goal again in the future, following the *Garcia* breach of contract rule. Applying the three year breach of contract limitations period one last time in a particular case will not, however, impair future uniformity, now that prospective litigants know *Garcia* will apply. The Court, therefore, finds that this second *Chevron* factor does not favor retrospective application in this case of the two year Delaware personal injury statute of limitations.

The third and final *Chevron* factor is to consider the inequity which may arise from retroactive application so as to avoid injustice or hardship. 404 U.S. at 107, 92 S.Ct. at 355. This factor is closely tied in with the first factor in that there is a much greater chance of reaching an inequitable result when the plaintiff relies on a clear precedent which established a longer statute of limitations period. "Where the plaintiff could have reasonably waited to file suit under the established prior rule, it would be inequitable to say he had slept on his rights because of a later and unforseeable Supreme Court decision." *Smith* at 196 (*quoting Chevron,* 404 U.S. at 108, 92

S.Ct. at 356). The established Delaware limitations period for § 1981 actions was three years. *Burris v. Wright,* 459 F.Supp. at 159. The plaintiff had a right to rely on this and it would be inequitable to find that the plaintiff has slept on his rights in this situation.

In light of these three *Chevron* factors and their application to the Delaware limitations period for § 1981 claims, we conclude that the *Garcia* ruling should be applied prospectively in this action. Therefore, the previously established three year statute of limitations in Delaware is applicable to Ohemeng's claim. Based on this determination, the Court finds that the plaintiff's § 1981 claim was timely filed even if the action accrued as early as April 28, 1983. Accordingly, the defendant's summary judgment motion on this issue is denied.

**B.** *Because Plaintiff Has Alleged Race Discrimination, He Has Stated A Claim Under Section 1981 For Which Relief Can Be Granted.*

Defendants have moved for summary judgment on plaintiff's § 1981 claim alleging that plaintiff has failed to state a claim for which relief can be granted. Defendants contend that the basis of Ohemeng's § 1981 claim is that he was unfairly treated because of his African national origin. Section 1981 does not expressly protect an individual from discrimination stemming from his national origin, but rather it prohibits discrimination based on a person's race. The statute provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

The parties have stipulated that the plaintiff may amend the § 1981 claim in his complaint to add allegations of race discrimination to those charging discrimination on the basis of national origin. Defendants correctly point out that discrimination based on national origin alone is not a cognizable claim under § 1981. *Budinsky v. Corning Glass Works,* 425 F.Supp. 786, 787 (W.D.Pa.1977). In a footnote in their reply brief, defendants accuse Ohemeng of baselessly alleging race discrimination as a ploy to avoid dismissal of his § 1981 claim. However, in light of the facts so far alleged and following the guidelines set out by the Third Circuit in *Al-Khazraji v. Saint Francis College,* 784 F.2d 505 (3d Cir.1986), we rule that plaintiff should be permitted to conduct discovery concerning his allegations of racial discrimination.

The District Court in *Budinsky* maintained that because Congress specifically provided a remedy for employment discrimination stemming from an individual's national origin in Title VII, there is no congressional intention or judicially sound reason to expand the § 1981 protections against race discrimination to encompass claims of discrimination based on national origin. *Id.* at 789. Whether a defendant has acted discriminatorily towards a plaintiff because of that individual's race or his national origin is in many instances a factual determination that cannot be rendered with certainty in the course of a summary judgment proceeding. The *Budinsky* court recognized that other courts have allowed not only blacks, but whites, Hispanics and Indians to invoke the protections of § 1981. *Id.* at 788. In light of the extended use of § 1981 by persons other than blacks, the *Budinsky* court suggests that the parameters of § 1981 extend to victims of "group discrimination" based upon a "racial" identification, whether that identification be scientific or not. *Id.*

The Third Circuit recently had attempted to clarify the definition of "race" as intended to be used by Congress for purposes of § 1981. *Al-Khazraji v. Saint Francis College,* 784 F.2d 505, 517 (3d Cir.1986).

Although the Third Circuit concedes that the definition of "race" is elusive, the Court in *Al-Khazraji* emphasizes the necessity of attempting to distinguish racial discrimination cognizable under § 1981 from other types of discrimination which § 1981 does not reach. *Id.* at 517. Thus, the Court defines racial discrimination as "at a minimum, [involving] discrimination directed against an individual because he or she is genetically part of an ethnically and physiognomically distinctive subgrouping of *homo sapiens.*" *Id.*

In *Al-Khazraji*, the plaintiff, an associate professor at St. Francis College, was a Muslim and an Iraqi-born American citizen of Arabian descent. Alleging facts markedly similar to Ohemeng's claims, Al-Khazraji argued he was denied tenure at defendant college because of his race, religion and national origin. The District Court judge granted the defendant summary judgment finding that an individual of Arab origin could not make a cognizable race discrimination claim under § 1981. The Third Circuit reversed that decision and refused to find that Arabs, for § 1981 purposes, could not be victims of racially motivated discrimination. However, the Court made it clear that it did not reach the issue of whether § 1981 applied to claims of national origin discrimination. *Id.* at 514, n. 11. Alluding to its definition of race discrimination set forth above, the Court stated that "where a plaintiff comes into federal court and claims that he has been discriminated against because of his race, we will not force him first to prove his pedigree." *Id.* at 517. The Court granted plaintiff Al-Khazraji an opportunity to conduct additional discovery in support of his allegations of racial discrimination in violation of § 1981.

This Court finds that the Third Circuit's holding in *Al-Khazraji* requires a denial of defendants' motion for summary judgment on plaintiff's § 1981 claim. Ohemeng, a black naturalized African, shall be permitted further opportunity to offer the Court evidence that defendants discriminated against him on the basis of race in their decision to deny him further employment. The Court finds that it cannot, at this time, hold that there is not a genuine issue of material fact as to whether discrimination on the basis of "race" motivated defendants' termination of Ohemeng's teaching position at Delaware State College.

## IV. CONCLUSION.

For the reasons set forth above, the Court denies defendants' motion for summary judgment as to both plaintiff's § 2000e and § 1981 claims. An Order shall be issued consistent with this Opinion.