

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-7-1994

# Oshiver v. Levin, Fishbein, Sedran & Berman

Precedential or Non-Precedential:

Docket 93-1366

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Oshiver v. Levin, Fishbein, Sedran & Berman" (1994). *1994 Decisions.* Paper 179.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/179

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 93-1366

_____

SHERRY J. OSHIVER

Appellant,

vs.

LEVIN, FISHBEIN, SEDRAN & BERMAN

Appellee.


_____


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 92-07288)

_____


ARGUED OCTOBER 25, 1993

BEFORE:  BECKER, ROTH and LEWIS, Circuit Judges.

(Filed November 7, 1994)

_____


William L. McLaughlin, Jr. (ARGUED)
23 South Valley Road
Post Office Box 494
Paoli, PA  19301

    Attorney for Appellant

Christine C. Fritton
Patrick W. Kittredge (ARGUED)
Kittredge, Donley, Elson, Fullem & Embick
421 Chestnut Street
Fifth Floor
Philadelphia, PA  19106

     Attorneys for Appellee

———————

OPINION OF THE COURT

———————

LEWIS, <u>Circuit</u> <u>Judge</u>.

Appellant Sherry J. Oshiver brought suit against the Philadelphia law firm of Levin, Fishbein, Sedran & Berman, where she had been employed as an attorney, claiming violations of both Title VII and the Pennsylvania Human Relations Act.  This is an appeal from the district court's dismissal of Oshiver's complaint, upon the law firm's motion, on the ground that Oshiver's claims were time-barred.  We will affirm the district court's dismissal of Oshiver's discriminatory failure to hire claim, and reverse the district court's dismissal of Oshiver's discriminatory discharge claim.

I.

Oshiver, who had applied for a position as an associate attorney at Levin, Fishbein, Sedran, & Berman (the "firm") in May, 1989, was instead hired as an hourly attorney, having been informed that there were no salaried positions available at that time.  When she was hired, however, she was also advised by the firm that she would be considered for an associate position if and when an opening occurred.

On April 10, 1990, Oshiver was dismissed with the explanation that the firm did not have sufficient work to sustain her position as an hourly employee at that time, but that the firm would contact her if either additional hourly work or an associate position became available.

In January, 1991, having been unable to secure employment since her dismissal, Oshiver applied for unemployment compensation benefits. At a benefits hearing on May 21, 1991, Oshiver learned that shortly after her dismissal, a male attorney had been hired by the firm to take over her duties as an hourly employee. Nearly six months after acquiring this information, on November 8, 1991, Oshiver filed administrative complaints with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") alleging that her dismissal was the product of gender discrimination.

In January, 1992, Oshiver learned that the firm had hired a male attorney as an associate in May of 1991, without notifying her that an associate position had opened. The firm's failure to hire her as an associate, according to Oshiver, constituted an additional instance of gender discrimination. Thus, Oshiver amended her administrative complaints in early April, 1992, to include a claim of discriminatory failure to hire.

On September 28, 1992, the EEOC issued Oshiver a right to sue letter, and on December 21, 1992, she filed a complaint in the United States District Court for the Eastern District of Pennsylvania alleging discrimination under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act.

The district court granted the firm's motion to dismiss Oshiver's complaint, holding that her federal claims were time-barred because the statutory limitations period had begun to run on April 10, 1990, the day the firm dismissed Oshiver; on that day, the court concluded, Oshiver knew or had reason to know that an alleged discriminatory act had occurred. The district court refused to apply the doctrine of equitable tolling to excuse Oshiver's failure to file her EEOC charge timely, finding nothing in Oshiver's complaint to suggest that the law firm had misled her respecting her cause of action.

In reviewing the district court's dismissal of Oshiver's claims of discrimination, we are called upon to balance the relevant statutorily mandated deadlines against certain tolling doctrines that might apply to extend them.

## II.

We have jurisdiction over this appeal under 28 U.S.C. § 1291. Since this is an appeal from a district court's dismissal pursuant to Rule 12(b)(6), we exercise plenary review. Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 871 (3d Cir. 1992).[1] We accept all facts pleaded as true

---

[1]. While the language of Fed.R.Civ.P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading. See Trevino v. Union Pacific Railroad Co., 916 F.2d 1230 (7th Cir. 1990); 5A Wright and Miller, Federal Practice and Procedure: Civil 2d, § 1357.

and draw all reasonable inferences in favor of the plaintiff, D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364, 1367 (3d Cir. 1992), focussing on the pleadings[2] to determine whether the plaintiff has stated a claim upon which relief may be granted.

III.

As noted above, the timeliness of Oshiver's administrative complaints is the key issue before us. Oshiver claims that her charges under Title VII were timely brought because the statutory limitations period did not begin to run until May 21, 1991, when she first discovered that the firm had hired a male attorney to assume her former duties as an hourly employee. Therefore, Oshiver argues, her filing on November 8, 1991, was timely. The firm disagrees, as did the district court. In the firm's view, the statute of limitations began to run on the date of Oshiver's termination, April 10, 1990, thus rendering Oshiver's administrative complaints untimely.

Title VII, like the PHRA, allows a plaintiff to bring suit within 180 days after the alleged act of discrimination; however, if the plaintiff initially filed a complaint with a state or local agency with authority to adjudicate the claim, he or she is allotted 300 days from the date of the alleged discrimination within which to file a charge of employment

---

[2]. We may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case. 5A Wright & Miller, Federal Practice and Procedure: Civil 2d, § 1357; Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

discrimination with the EEOC.  42 U.S.C. § 2000e-5(e).[3]

Therefore, since Oshiver filed a complaint with the PHRA, she had

300 days after the alleged act of discrimination in which to

bring a charge with the EEOC.  See Davis v. Calgon Corp., 627

F.2d 674, 675 (3d Cir. 1980) (per curiam) (300-day limitations

period applied even though plaintiff's filing with state agency

was untimely).[4]

There are two doctrines which might apply in this case

to extend the time period Oshiver had in which to file her

charges of discrimination:  the discovery rule and the equitable

tolling doctrine.  As the Seventh Circuit observed in Cada v.

Baxter Healthcare Corp., 920 F.2d 446 (7th Cir. 1990), these

theories, and their application, invite confusion.  We will first

---

[3].    42 U.S.C. § 2000e-5(e) states, in pertinent part:

> A charge under this section shall be filed within
> one hundred and eighty days after the alleged
> unlawful employment practice occurred . . . except
> that in a case of unlawful employment practice
> with respect to which the person aggrieved has
> initially instituted proceedings with a State or
> local agency with authority to grant or seek
> relief from such practice or to institute criminal
> proceedings with respect thereto upon receiving
> notice thereof, such charge shall be filed by or
> on behalf of the person aggrieved within three
> hundred days after the alleged unlawful employment
> practice occurred. . . .

42 U.S.C. § 2000e-5(e).

[4].    While Davis was brought under the Age Discrimination in
Employment Act of 1967 ("ADEA"), Title VII and the ADEA have been
given parallel constructions due to their similarities in purpose
and structure.  Kocian v. Getty Refining & Marketing Co., 707
F.2d 748, 752 n.3 & n.4 (3d Cir. 1983).  See also Oscar Mayer &
Co. v. Evans, 441 U.S. 750, 756 (1979).

discuss each of these doctrines and then apply them in turn to determine whether Oshiver timely filed her discrimination claims.

## A. The Discovery Rule

We begin with the discovery rule.[5] As a general rule, the statute of limitations begins to run when the plaintiff's cause of action accrues. Cada, 920 F.2d at 450. As the court in Cada noted, the accrual date is not the date on which the wrong that injures the plaintiff occurs, but the date on which the plaintiff discovers that he or she has been injured. Id. There will, of course, be times when the aggrieved person learns of the alleged unlawful employment practice, for example, at the very moment the unlawful employment practice occurs; in such cases the statutory period begins to run upon the occurrence of the alleged unlawful employment practice. However, there will also be occasions when an aggrieved person does not discover the occurrence of the alleged unlawful employment practice until some

---

[5]. Because the discovery rule's origins are in products liability and medical malpractice cases, the rule finds perhaps its most natural application in cases where legal injury flows from physical injury. The discovery rule, however, is not limited in its application to situations involving bodily injury, and may also apply in cases involving alleged employment discrimination, where the actual injury at issue is not physical in the same way that bodily injury is physical. In this regard we agree with the court in Cada that the discovery rule is implicit in Delaware State College v. Ricks, 449 U.S. 250 (1980). Cada, 920 F.2d at 450. In Ricks, a Title VII case, the Supreme Court held that the statute of limitations began to run "at the time the [alleged discriminatory] tenure decision was made and communicated to Ricks." Ricks, 449 U.S. at 258 (emphasis supplied). See also Ohemeng v. Delaware State College, 643 F. Supp. 1575, 1580 (D. Del. 1986) (Roth, J.) (applying discovery rule in Title VII setting).

time after it occurred.  The discovery rule functions in this latter scenario to postpone the beginning of the statutory limitations period from the date when the alleged unlawful employment practice occurred, to the date when the plaintiff actually discovered he or she had been injured.  Cada, 920 F.2d at 450.  In either scenario, once the plaintiff's cause of action has accrued, that is, once the plaintiff has discovered the injury, the statutory limitations period begins to run and the plaintiff is afforded the full limitations period, starting from the point of claim accrual, in which to file his or her claim of discrimination.  Id. at 452 ("[I]t is entirely clear that the discovery rule if applicable gives the plaintiff the entire statute of limitations period in which to sue, counting from the date of discovery. . . .").

A claim accrues in a federal cause of action as soon as a potential claimant either is aware, or should be aware, of the existence of and source of an injury.  See Keystone Insurance Co. v. Houghton, 863 F.2d 1125, 1127 (3d Cir. 1988) (stating this general proposition in the context of determining the accrual date of a RICO cause of action).  A different rule, we have noted, would require an insufficient degree of diligence on the part of the potential claimant.  Keystone Insurance, 863 F.2d at 1127.  With specific regard to Title VII claims, and in a similar vein, the United States District Court for the District of Delaware observed that the limitations period for Title VII claims begins to run, under federal law, "`when the plaintiff knows or reasonably should know that the discriminatory act has

occurred.'"  Ohemeng v. Delaware State College, 643 F. Supp.
1575, 1580 (D.Del. 1986) (Roth, J.) (quoting McWilliams v.
Escambia County School Board, 658 F.2d 326, 330 (5th Cir. 1981)).
Thus, the "polestar" of the discovery rule is not the plaintiff's
actual knowledge of injury, but rather whether the knowledge was
known, or through the exercise of reasonable diligence, knowable
to the plaintiff.  See Bohus v. Beloff, 950 F.2d 919, 925 (3d
Cir. 1991) (construing Pennsylvania law and applying the
discovery rule in connection with a medical malpractice cause of
action) (citations omitted).  In short, the discovery rule
functions to delay the initial running of the statutory
limitations period, but only until the plaintiff has discovered
or, by exercising reasonable diligence, should have discovered
(1) that he or she has been injured, and (2) that this injury has
been caused by another party's conduct.  Bohus, 950 F.2d at 924.

The question arises whether a plaintiff's discovery of
the actual, as opposed to the legal, injury is sufficient to
trigger the running of the statutory period.  In other words,
does the statutory period begin to run upon a plaintiff's
learning that he or she has been discharged from employment, for
example, or does it begin to run only after a plaintiff comes to
realize that the discharge constituted a legal wrong?  We have in
the past stated that a claim accrues in a federal cause of action
upon awareness of actual injury, not upon awareness that this
injury constitutes a legal wrong.  See Keystone Insurance, 863
F.2d at 1127.  See also Bohus, 950 F.2d at 924-25 (In order for a
claim to accrue, "[t]he plaintiff need not know the exact medical

cause of the injury; that the injury is due to another's negligent conduct; or that he [or she] has a cause of action.") (citations omitted).  Likewise, by indicating that the discovery rule postpones the beginning of the limitations period from the date a plaintiff was wronged until the date a plaintiff discovers that he or she was injured, the Court of Appeals for the Seventh Circuit in Cada has, at least by implication, suggested that awareness of actual injury, as opposed to legal injury, is sufficient to trigger the running of the statutory period.  Cada, 920 F.2d at 450.  See also Merrill v. Southern Methodist University, 806 F.2d 600, 604-05 (5th Cir. 1986) (stating that the limitations period in Title VII cases starts to run on the date when the plaintiff knows or reasonably should know that the discriminatory act has occurred, not on the date the victim first perceived that a discriminatory motive caused the act).

### B.  Equitable Tolling

#### 1.

We preface our analysis of the equitable tolling doctrine with the observation that the time limitations set forth in Title VII are not jurisdictional.  See Hart v. J.T. Baker Chemical Co., 598 F.2d 829, 831 (3d Cir. 1979).  These time limitations are analogous to a statute of limitations and are, therefore, subject to equitable modifications, such as tolling. Id.  Such treatment of Title VII's time limitation provisions is in keeping with our goal of interpreting humanitarian legislation in a humane and commonsensical manner so as to prevent unnecessarily harsh results in particular cases.  Id.

> Where the filing requirements are considered
> "jurisdictional," non-compliance bars an
> action regardless of the equities in a given
> case. Thus equitable tolling could not be
> invoked where, for example, the employer
> prevented the employee from asserting his or
> her rights by actively concealing or
> misleading the discharged employee as to the
> true reasons for the discharge. We conclude
> therefore that the timing provisions should
> be subject to a similar type of equitable
> tolling as is applied to statutes of
> limitations.

Id. at 832.

Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed. Cada, 920 F.2d at 450. We have instructed that there are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. School District of City of Allentown v. Marshall, 657 F.2d 16, 19-20 (3d Cir. 1981) (quoting Smith v. American President Lines, Ltd., 571 F.2d 102, 109 (2d Cir. 1978); see also Miller v. Beneficial Management Corp., 977 F.2d 834, 845 (3d Cir. 1992) (citation omitted).[6]

---

[6]. Our discussion of equitable tolling in this case is germane only to those cases in which the doctrine is considered in connection with a defendant's deception regarding the plaintiff's cause of action. The other two established situations to which equitable tolling applies give rise to equitable considerations wholly unrelated to our discussion of the doctrine here.

In _Meyer v. Riegel Products Corporation_, 720 F.2d 303 (3d Cir. 1983), a case involving the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 _et_ _seq._, we observed that although the time limitations prescribed by Congress must be "treated seriously," cases may arise "`where the employer's own acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate his [or her] rights.'" _Meyer_, 720 F.2d at 307 (_quoting_ _Bonham v. Dresser Industries, Inc._, 569 F.2d 187, 193 (3d Cir. 1977)).  In such cases, equitable tolling may be appropriate.  _Id_.  _See_ _also_ _Smith v. American President Lines, Ltd._, 571 F.2d 102, 109 n.12 (2d Cir. 1978) ("The primary consideration underlying statutes of limitations is that of fairness to the defendant . . .  The most common and justifiable of the exceptions to the running of statutes of limitations[, therefore,] is based upon affirmative acts of the defendant which have impeded suit.").  We have held, in the context of employment discrimination cases, that the equitable tolling doctrine may excuse the plaintiff's non-compliance with the statutory limitations provision at issue when it appears that (1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge, and (2) this deception caused the plaintiff's non-compliance with the limitations provision.  _See_ _Meyer_, 720 F.2d at 308-09.

The _Meyer_ and _Hart_ cases are helpful in our present endeavor to sketch the contours of the equitable tolling doctrine insofar as it applies to cases involving alleged employer deception.

In _Hart_, a defendant employer discharged the plaintiff, a female biochemist. At the time of her discharge, the plaintiff (Hart) was given four reasons for her dismissal, all unrelated to her gender. _Hart_, 598 F.2d at 830 n.2. Hart filed an untimely charge of gender discrimination with the EEOC. She later brought suit under Title VII. The district court granted the employer's motion for summary judgment, finding that (1) Hart had untimely filed her EEOC charge and (2) the facts of the case did not call for equitable tolling. _Id_. at 831.

We affirmed the district court's refusal to apply the equitable tolling doctrine, finding that all of the facts upon which Hart's charge of discrimination was predicated were known to her on the date of her discharge. _Id_. at 833.

> As a result, it cannot be said that the district court erred in deciding that at the time of plaintiff's discharge, her suspicions were sufficient to lead a reasonable person to inquire further into the reasons for her discharge. Accordingly, the district court committed no reversible error in declining to toll the filing requirements of Title VII.

_Id_. at 834. We also expressed concern over the extended period between Hart's discharge and her first contact with the EEOC, a period of 421 days. In the absence of evidence that the defendant employer had contributed to Hart's delay in filing, it could be "extremely unfair," we reasoned, to require the employer to defend against Hart's lawsuit. _Id_.

The Plaintiff in _Meyer_ was 61 years old when he was discharged. Suspecting age discrimination, Meyer contacted his former employer shortly after his termination and sought the

reason for his dismissal. The employer informed Meyer that he had been dismissed due to a "reorganization." Meyer, 720 F.2d at 305. After filing a charge of age discrimination with the United States Department of Labor, Meyer brought suit against the employer. Meyer, 720 F.2d at 306. The district court granted the employer's motion for summary judgment, finding that Meyer had failed to file a timely charge with the Department of Labor. In arriving at this conclusion, the court explicitly rejected Meyer's plea to invoke the doctrine of equitable tolling, noting that his own statements revealed that he suspected from the day of his discharge that he had been dismissed because of his age. Id. at 306.

We reversed the district court's summary dismissal of Meyer's ADEA claim. We found that he had alleged acts on the part of the employer that, taken as alleged, could persuade a court to activate the doctrine of equitable tolling. We then emphasized the differences between Meyer and Hart:

> In Hart, plaintiff-employee suspected at the time of her dismissal that gender may have played an operative factor in the discharge. She did not file the required charge letter, however, until 477 days after the discriminatory act allegedly took place. The applicable limitation period had been 180 days. In affirming the district court's rejection of the equitable tolling claim, we noted that "the facts upon which her charge was predicated were known to her on the date of the discharge." In short, plaintiff simply did not allege that defendant had anything to do with her untimeliness. The court observed that, had plaintiff inquired into the reasons for her dismissal and then alleged that she had been deceived, an entirely different issue would have been

> presented.  Here, however, plaintiff Meyer
> alleges precisely what the plaintiff in Hart
> failed to allege:  that defendants deceived
> him into postponing the filing of a claim.
> Here, too, plaintiff did precisely what the
> Hart court suggests:  he asked defendants for
> an explanation of his dismissal.

Id. at 308 (citation omitted) (emphasis supplied).

2.

We next address the important question concerning the amount of time a plaintiff is afforded in which to file an otherwise untimely charge or complaint when equitable tolling is activated by the defendant employer's deception regarding the plaintiff's cause of action.  We have not, prior to this case, provided an answer.

We begin by restating the fundamental rule of equity that a party should not be permitted to profit from its own wrongdoing.  This basic principle underlies the equitable tolling doctrine itself.  See Miklavic v. USAir Inc., 21 F.3d 551, 557 (3d Cir. 1994).  To allow a defendant to benefit from the statute of limitations defense after intentionally misleading the plaintiff with regard to the cause of action, thereby causing the plaintiff's tardiness, would be "manifestly unjust."  Cf. Miklavic, 21 F.3d at 557.  See also LaVallee Northside Civic Ass'n v. Coastal Zone Management, 866 F.2d 616, 625 (3d Cir. 1989) (stating that equitable tolling is based on the equitable principle that, having unfairly lulled the plaintiff into inaction, the defendant may not profit by such wrongful conduct through invocation of the statute of limitations defense).

Against the back-drop of this principle, we are lead to conclude that where a defendant actively misleads the plaintiff regarding the reason for the plaintiff's dismissal, the statute of limitations will not begin to run, that is, will be tolled, until the facts which would support the plaintiff's cause of action are apparent, or should be apparent to a person with a reasonably prudent regard for his or her rights. This is the rule set forth by the Court of Appeals for the Fifth Circuit in Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924 (5th Cir. 1975). It has been recognized and applied by a number of our sister circuits, see Vaught v. R.R. Donnelley & Sons Co., 745 F.2d 407, 410-12 (7th Cir. 1984) (applying Reeb and referring to it the "seminal case" in the area of equitable tolling); Wilkerson v. Siegfried Ins. Agency, Inc., 683 F.2d 344, 345-46 (10th Cir. 1982) (applying Reeb); Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1531-32 (11th Cir. 1992) (same), and we adopt it here.

In Reeb, the plaintiff, a woman, was employed by Economic Opportunity of Atlanta (the "EOA"). The EOA terminated Reeb's employment, citing a "limitation of funds" as the reason. Reeb, 516 F.2d at 926. Nearly seven months later, Reeb learned that soon after dismissing her, the EOA had given her former position to an allegedly less qualified male employee. Upon learning of her replacement, Reeb filed charges of gender discrimination with the EEOC. The district court dismissed the case on the ground that Reeb had failed to file her administrative complaint within ninety days of the alleged

discriminatory discharge.  Id.  The court of appeals vacated the

district court's judgment dismissing the case.  Id. at 931.

Finding that the 90-day period did not begin to run until Reeb

had learned of the EOA's replacement hire, the court of appeals

stated:

> [I]t is alleged that the EOA actively sought
> to mislead Mrs. Reeb in informing her that
> adequate funds for her program would no
> longer be available.  It is further alleged
> that the facts that would alert a reasonable
> person to the unlawful discrimination only
> became known to the plaintiff more than six
> months after the discriminatory act. . . .
> In these circumstances we apply the familiar
> equitable modification to statutes of
> limitation:  the statute does not begin to
> run until the facts which would support a
> cause of action are apparent or should be
> apparent to a person with a reasonably
> prudent regard for his [or her] rights.

Id. at 930.

Thus, where the plaintiff has been actively misled

regarding the reason for his or her discharge, the equitable

tolling doctrine provides the plaintiff with the full statutory

limitations period, starting from the date the facts supporting

the plaintiff's cause of action either become apparent to the

plaintiff or should have become apparent to a person in the

plaintiff's position with a reasonably prudent regard for his or

her rights.  The appropriateness of this rule, as a matter of

equity, can be illustrated by reference to Cada.

The court in <u>Cada</u> distinguished "equitable estoppel" and "equitable tolling."[7]  According to <u>Cada</u>, equitable estoppel arises where the defendant has attempted to mislead the plaintiff and thus prevent the plaintiff from suing on time.  <u>Id</u>. at 452.  Thus, according to <u>Cada</u>, equitable estoppel requires a showing of inequitable conduct on the part of the defendant.  In contrast, for equitable tolling, all the plaintiff need show is that he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim.  <u>Id</u>.  With this contrast in mind, the court went on to discuss the remedy each doctrine affords:

> [I]f fraudulent concealment [i.e., equitable estoppel] is shown[,] the court must subtract from the period of limitations the entire period in which the tolling condition is in effect, for otherwise the defendant would obtain a benefit from his [or her] inequitable conduct[.  However,] it is not at all clear that equitable tolling –- a doctrine that adjusts the rights of two innocent parties –- is as generous. . .  We do not think equitable tolling should bring about an automatic extension of the statute of limitations by the length of the tolling period. . .  It is, after all, an equitable doctrine.  It gives the plaintiff extra time if he [or she] needs it.  If [the plaintiff] doesn't need it there is no basis for depriving the defendant of the protection of the statute of limitations.  Statutes of

---

[7].    The doctrine which the Seventh Circuit describes as "equitable estoppel" appears to be the same, in all important respects, as our "equitable tolling" insofar as our "equitable tolling" excuses a late filing where such tardiness results from active deception on the part of the defendant.  We note that what the Seventh Circuit in <u>Cada</u> calls "equitable tolling" is not what we are describing when we use and apply the same term in the context of employer deception.

> limitations are not arbitrary obstacles to
> the vindication of just claims . . . they
> protect important social interests in
> certainty, accuracy, and repose. When we are
> speaking not of equitable estoppel but of
> equitable tolling, we are (to repeat) dealing
> with two innocent parties and in these
> circumstances the negligence of the party
> invoking the doctrine can tip the balance
> against its application. . . .

Id. at 452-53.

We agree that where the plaintiff's failure to file timely cannot be attributed to any inequitable conduct on the part of the defendant, an automatic extension of the statute of limitations by the length of the tolling period does not make sense as a matter of equity. However, such an automatic extension makes eminent equitable sense where the defendant has, by deceptive conduct, caused the plaintiff's untimeliness.

C.

By way of summary, the discovery rule and the equitable tolling doctrine are similar in one respect and different in another. The doctrines are similar in that each requires a level of diligence on the part of the plaintiff; that is, each requires the plaintiff to take reasonable measures to uncover the existence of injury. See Keystone Insurance, 863 F.2d at 1127 (making this point with regard to the discovery rule); Reeb, 516 F.2d at 930 (making this point with regard to equitable tolling). The plaintiff who fails to exercise this reasonable diligence may lose the benefit of either doctrine. The two doctrines differ, however, with respect to the type of knowledge or cognizance that triggers their respective applications. The discovery rule keys

on a plaintiff's cognizance, or imputed cognizance, of actual injury.  See Merrill, 806 F.2d at 604-05. Equitable tolling, on the other hand, keys on a plaintiff's cognizance, or imputed cognizance, of the facts supporting the plaintiff's cause of action.[8]  Underlying this difference between the discovery rule and equitable tolling is the more fundamental difference in purpose between the two rules.  The purpose of the discovery rule is to determine the accrual date of a claim, for ultimate purposes of determining, as a legal matter, when the statute of limitations begins to run.  Equitable tolling, at least as the doctrine might apply in Oshiver's case, presumes claim accrual. Equitable tolling steps in to toll, or stop, the running of the statute of limitations in light of established equitable considerations.

III.

We now apply the discovery rule and the doctrine of equitable tolling to Oshiver's claims.

---

[8].    Of course, cognizance of the facts supporting the plaintiff's cause of action presumes cognizance of actual injury.

A.

With regard to Oshiver's claim of discriminatory discharge, we have no difficulty in concluding that for purposes of the discovery rule, Oshiver "discovered" the injury on April 10, 1990, the very date defendant law firm informed her of her discharge. Simply put, at the moment the law firm conveyed her dismissal to her, Oshiver became aware (1) that she had been injured, i.e., discharged, and (2) that this injury had been caused by another party's conduct. That Oshiver may have been deceived regarding the underlying motive behind her discharge is irrelevant for purposes of the discovery rule. See Keystone Insurance, 863 F.2d at 1127.

Having discovered the injury associated with her alleged wrongful discharge on April 10, 1990, it is clear that the discovery rule offers Oshiver no relief in relation to the timeliness of the filing of her discriminatory discharge claim. This filing occurred on November 8, 1991. Oshiver's wrongful discharge action accrued on April 10, 1990. Oshiver waited some 440 days before filing her administrative complaint, or too long by some 140 days.[9]

---

[9]. An argument can be made that since Oshiver had been hired as a temporary employee, she did not know, and could not have been expected to know, that she had been injured until she learned, later on, that the law firm had hired another hourly temporary employee a few weeks after her discharge. However, this argument overlooks the fact that the discovery rule hinges upon actual, as opposed to legal, injury. That Oshiver may not have known on April 10, 1990, that her discharge constituted an actionable legal wrong does not matter for discovery rule purposes.

We next address whether Oshiver's discriminatory failure to hire claim is saved by the operation of the discovery rule. In so doing, it bears repeating that the discovery rule requires the plaintiff to exercise reasonable diligence in the ascertainment of injury. We cannot say that Oshiver exercised the reasonable diligence required by the discovery rule in connection with her discovery of the firm's hiring of the male associate. This hiring occurred sometime in May of 1991. Had Oshiver exercised reasonable diligence -- had she, for example, telephoned the law firm periodically to monitor the status of her own outstanding associate application, or checked with the firm in May of 1991 after learning that it had hired an hourly attorney shortly after discharging her -- she would almost certainly have discovered the associate hiring much earlier. Thus, the discovery rule affords Oshiver no relief in connection with the timing of the filing of her failure to hire claim.

## B.

We now apply the doctrine of equitable tolling to Oshiver's discriminatory discharge claim.[10]

---

[10]. We do not apply this doctrine to Oshiver's failure to hire claim, however, because nowhere in the complaint does Oshiver allege that the law firm misled her, actively or otherwise, with respect to this claim. Accordingly, there is no basis for the application of the equitable tolling doctrine. Oshiver's complaint in this regard merely alleges that the firm told her that she would be considered for an associate position if one became available, but did not contact her upon the opening of an associate position. Thus, at most, Oshiver alleges that the firm concealed from her the fact that an associate opening arose. To be activated, equitable tolling requires active misleading on the part of the defendant. The type of concealment Oshiver alleges

Oshiver's complaint alleges that at the time of her dismissal, the firm offered the explanation that it had no work for her to perform.  Oshiver also alleges in her complaint that she learned in May of 1991 that she had been replaced by a male, and that "apparently there was work to do at the firm."  (Joint Appendix at 20a).  The district court concluded that the allegations in Oshiver's complaint were insufficient to invoke the doctrine of equitable tolling.  However, this issue was raised in the context of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  The district court was to accept all allegations of fact as true and draw all reasonable inferences in Oshiver's favor.  <u>Middle Bucks Area Vocational Technical School</u>, 972 F.2d at 1367.  Therefore, all that was required of Oshiver at this stage was that she plead the applicability of the doctrine.  A fair reading of Oshiver's complaint is that she claims that the firm told her there was no work when "apparently there was . . .," a fact which she learned for the first time much later.  Thus, Oshiver's allegations essentially charge that (1) the firm actively misled her regarding the reason for her discharge, and (2) the critical fact that would have alerted a reasonable person to the alleged unlawful discrimination only became known to Oshiver on May 21, 1991.  We find that these allegations, taken as true and giving Oshiver the benefit of all reasonable

(..continued)
is, in our view, qualitatively different from taking affirmative steps to mislead.

inferences, are sufficient to activate the doctrine of equitable tolling.  See Reeb, 516 F.2d at 930.

We offer no view as to whether Oshiver will derive ultimate benefit from the equitable tolling doctrine in relation to her wrongful discharge claim.  The factual questions remain (1) whether the firm effectively misled Oshiver with respect to her discriminatory discharge cause of action; (2) if so, whether a person such as Oshiver, with a reasonably prudent regard for her rights, would have been misled by the firm's communication; and (3) if so, whether a person in Oshiver's position with a reasonably prudent regard for her rights would have learned of the firm's deception sooner.  These factual inquiries must be undertaken before a proper resolution of the equitable tolling issue can reached.

We wish to make clear, however, that the purpose of and the remedy afforded by the equitable tolling doctrine, at least insofar as it applies in cases involving defendant employer deception, are understood properly only in light of the equitable principle which underlies the doctrine, namely, that one should not be permitted to benefit from his or her own wrongdoing.  See Reeb, 516 F.2d at 930 ("`Deeply rooted in our jurisprudence, this principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations.'") (quoting Glus v. Brooklyn Eastern District Terminal, 1959, 359 U.S. 231, 232–33 (1959)); Miklavic v. USAir, Inc., 21 F.3d at 557.  Our conclusion that the equitable tolling doctrine tolls the initial

running of the statutory period until the plaintiff knows, or should reasonably be expected to know, the concealed facts supporting the cause of action flows directly, and naturally, from this fundamental equitable principle. Unless the plaintiff is then given the full statutory period in which to file his or her charge of discrimination, starting from the moment he or she acquires or constructively acquires such knowledge, the defendant's inequitable conduct will have served to shorten the limitations period, and thus benefit the defendant. This is precisely the result the equitable tolling doctrine was created to avoid.

IV.

For the reasons stated above, we will affirm the district court's dismissal of Oshiver's discriminatory failure to hire claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). We will reverse the district court's dismissal of Oshiver's discriminatory discharge claim and remand for proceedings consistent with this opinion.

_____