The **CHILDREN'S HOSPITAL OF PHILADELPHIA**

v.

**INDEPENDENCE BLUE CROSS, et al.**

No. Civ.A. 99–CV–5532.

United States District Court, E.D. Pennsylvania.

March 22, 2000.

Mark H. Gallant, Cozen & O'Connor, Philadelphia, PA, for Children's Hospital of Philadelphia, plaintiff.

Richard L. Bazelon, Bazelon & Less, Philadelphia, PA, for Independence Blue Cross, defendant.

## *MEMORANDUM*

O'NEILL, District Judge.

Plaintiff Children's Hospital of Philadelphia (CHOP) brings this action against defendants Independence Blue Cross (IBC), a nonprofit hospital plan corporation, and various IBC affiliates. In the complaint CHOP alleges that defendants violated the Lanham Act by using CHOP's

name in promoting their health insurance products after the expiration of the 1996 Letter Agreement between CHOP and IBC. CHOP seeks an injunction barring defendants from using CHOP's name as well as damages for defendants's alleged misuse of that name. In addition, CHOP asks to be reimbursed, based on its usual and customary charges, for medical services provided to IBC health plan subscribers after the letter agreement's expiration. Now before me are defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and plaintiff's response thereto.

## I.

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. In considering a motion to dismiss, I must accept as true all well-pleaded factual allegations contained in the complaint and draw all reasonable inferences in plaintiffs' favor. I may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case without converting a Rule 12(b)(6) motion into a motion for summary judgment. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1385, n. 2 (3d Cir. 1994). I may grant defendants' motion only if I conclude that plaintiffs would not be entitled to relief under any set of facts consistent with their allegations. *See Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994).

## II.

Over the years CHOP has participated as an IBC network hospital through a series of contracts with IBC and its affiliates. Under these contracts CHOP agreed to be compensated for hospital services provided to IBC and IBC affiliate subscribers at rates discounted from CHOP's usual and customary charges. Compl. ¶ 25. On or about October 31, 1996, CHOP and defendants entered into a letter agreement ("the 1996 Letter Agreement") which set forth a new rate sched-

ule. The agreement had an effective date of July 1, 1995 and an initial term of four (4) years. Letter from McKeown to Troilo of 10/31/96, at 1. It was also terminable by either party upon ninety (90) days written notice. *Id.* In contrast to the previous agreement between the parties, the 1996 Letter Agreement did not contain a renewal clause or other provision which would automatically extend its initial term in the absence of a cancellation notice. *See* Letter from McKeown and Zamzow to Troilo of 5/26/92, at 1. Accordingly, the agreement's initial term was to expire on July 1, 1999.

For a period of several months prior to July 1, 1999, the parties attempted to negotiate a new agreement. Compl. ¶ 28. In a letter dated July 14, 1999, CHOP notified the Pennsylvania Insurance Department (PID) that its agreement with IBC had expired as of July 1 and invited the PID to contact CHOP promptly if it had any questions. Letter from Troilo to Koken of 7/14/99. CHOP also informed IBC in letters dated July 14 and 15 that the agreement had expired. Letter from Notebaert to DiBona of 7/14/99; Letter from Troilo to McKeown of 7/15/99. In its letter of July 15, CHOP enclosed a new rate schedule, effective August 1. Letter from Troilo to McKeown of 7/15/99. IBC, in a letter dated July 19, disagreed with CHOP's assertion that the agreement had expired. It wrote that the 1996 Letter Agreement "states that the contracts are terminable by either party upon ninety (90) days written notice [and][s]ince neither party has given such notice the agreement remains in effect." Letter from McKeown to Troilo of 7/19/99. CHOP responded in a letter also dated July 19 in which it maintained that the 1996 agreement had expired at the end of its four-year term. Letter from Troilo to McKeown of 7/19/99. By letter dated July 29, IBC rejected CHOP's new rate schedule and made a proposal of its own. Letter from McKeown to Troilo of 7/29/99. CHOP, in turn, refused to accept IBC's proposal. IBC has continued to pay CHOP based on the rates set out in the

1996 Letter Agreement and continues to represent to subscribers, physicians and the general public that CHOP is an IBC Network hospital. Compl. ¶¶ 35, 40, 47, 93. As a result, CHOP commenced this action on November 8, 1999.

### III.

Defendants contend that the complaint should be dismissed because the 1996 Letter Agreement was not terminated in accordance with Pennsylvania law. More specifically, defendants argue that CHOP failed to give advance notice of its intent to terminate the agreement as required by provisions of the Pennsylvania Hospital Plan Corporation Act and the Pennsylvania Administrative Code. CHOP claims that the agreement expired at the conclusion of its express four year term and that the statutory and regulatory provisions relied upon by defendants do not apply to contracts which expire in accordance with their own terms.

Section 6124 of the Pennsylvania Hospital Plan Corporation Act, 40 Pa.C.S.A. §§ 6101 *et seq.*, provides for administrative review of contracts between hospital plan corporations and hospitals.[1] All such contracts must be submitted by the hospital plan corporation to the Pennsylvania Insurance Department (PID) for its prior approval.[2] 40 Pa.C.S.A. § 6124(a), (b). In addition, to protect the reasonable expectations of health plan subscribers, the Legislature declared that "termination of contracts between hospital plan corporations and hospitals ... [are] subject to prior approval by the department as provided in this subsection." 40 Pa.C.S.A. § 6124(c)(1). Accordingly, "no contract

between a hospital plan corporation and any hospital providing for the rendering of hospitalization to subscribers to the hospital plan shall be terminated unless the party seeking such termination gives 90 days advance written notice to the other party to the contract and to the department of the proposed termination." 40 Pa.C.S.A. § 6124(c)(2). Where a proposed termination involves contracts with hospitals having more than 5% of the beds in the area served by the hospital plan corporation, the PID is required to hold public hearings to investigate the reasons for the proposed termination. 40 Pa.C.S.A. § 6124(c)(3). After holding hearings, the PID must make specific factual findings and either approve termination or recommend terms for continuation of the contract. 40 Pa.C.S.A. § 6124(c)(3). If the PID recommends terms for continuation of the contract, the parties must renew their negotiations in order to determine if a new agreement can be reached. 40 Pa.C.S.A. § 6124(c)(4). If the parties cannot reach a new agreement within 90 days, they must so advise the PID, which must then approve termination of the contract at the end of a further period of 30 days. 40 Pa.C.S.A. § 6124(c)(4).

Regulations imposing a similar notice requirement for contracts between health care providers and health maintenance organizations (HMOs) have been issued by the PID pursuant to the Pennsylvania Health Maintenance Organization Act, 40 Pa.C.S.A. §§ 1551 *et seq.* According to those regulations, "[a]n agreement to provide health care services between a provider and an HMO shall require that if the provider terminates the agreement, the

1. On December 18, 1996, Section 6124 was amended by the Accident and Health Filing Reform Act, 40 Pa.C.S.A. § 3801 *et seq.*, effective for contracts filed after February 17, 1997. None of these amendments applies to the 1996 Letter Agreement.

2. CHOP contends that IBC never filed the 1996 Letter Agreement with the PID and relies upon the affidavit of Kathleen M. Layman to support this contention. In the affidavit, Ms. Layman states that she participated in a

review of all IBC contracts on file with the PID, found no reference to the 1996 Letter Agreement, and spoke to a PID employee to confirm that IBC had never filed the agreement. While IBC has not challenged CHOP's factual contention, it has moved to strike the affidavit on the grounds that it does not comply with Rule 56(e) of the Federal Rules of Civil Procedure. Since I need not consider the affidavit in deciding the motion to dismiss, IBC's motion to strike will be dismissed as moot.

provider shall give the HMO at least 60 days advance notice of termination." 31 Pa.Code § 301.124.

■ At issue before me is whether the provisions cited above and relied upon by defendants apply to a contract which has expired according to its own terms. The notice provisions of the Hospital Plan Corporation Act refer only to a proposed "termination"—not the natural "expiration"—of an agreement. *See* 40 Pa.C.S.A. § 6124(c)(2). Likewise, the notice requirement for contracts between HMOs and health care providers comes into effect only if the provider terminates the agreement; the regulation makes no reference to contract expiration. Thus, for these statutory and regulatory provisions to apply, the terms "termination" and "expiration" must be interchangeable. In my view, however, "termination," as used in this context, denotes an early or premature ending of a contract as a result of some action undertaken by one or both of the parties. "Expiration", on the other hand, refers to the natural conclusion of a contract at the end of a time period set by the contract itself. Put simply, a party may terminate an agreement but it cannot

"expire" it.[3] To disregard the distinction between these two terms would violate the plain meaning of the statutory and regulatory language at issue.[4]

More important, this distinction between "termination" and "expiration" makes sense in light of the underlying rationale for the notice requirements—the protection of health plan subscribers' reasonable expectations. *See* 40 Pa.C.S.A. § 6124(c)(1). When an agreement is "terminated" before it would have "expired" by its own terms, access to services is cut off prematurely; the notice provisions provide a cooling off period during which the hospital plan corporation and the PID can take appropriate action. If, however, a contract is not being ended prematurely but merely expires in accordance with its own terms, the contract itself gives notice of when access to services will end. In that event, the hospital plan corporation and the PID can take appropriate action in the months preceding expiration. Providing "notice" to the hospital plan corporation or the PID of a contract's expiration would simply inform them of a contractual term which they have already approved and would therefore serve no purpose.[5]

3. Defendant is correct that "terminate" and "expire" are sometimes synonymous, but only when used in the intransitive. For example, "the statute of limitations period terminates" is synonymous with "the statute of limitations expires." In both the statute and the regulation at issue here, however, "terminate" is transitive. Section 6124(c)(2) uses the phrase "[n]o contract ... shall be terminated" rather than "no contract shall terminate." *See* 40 Pa.C.S.A. § 6124(c)(2).

4. Ironically, defendants also draw a distinction between "termination" and "expiration", though not the same distinction adopted by me. In their brief defendants assert that: [Section 6124] requires notice of a "termination", not notice that an agreement has "expired." The July 14, 1999 letter by CHOP to the Department of Insurance does not notify the Insurance Department of a "termination." The fact that an agreement has expired does not mean that the parties have not decided to continue under contract. Def.'s Mem., at 16. Defendants are correct that the parties to an expired contract may

decide to continue to do business under that contract. However, such a decision represents a new agreement. Plaintiff alleges that no such agreement exists and I must accept that allegation as true for purposes of this motion. .

5. Even if notice of the expiration of a contract were required by state law, CHOP did in fact provide such notice to both the PID and IBC in separate letters dated July 14 and 15, 1999. The "termination" of the 1996 Letter Agreement would therefore have been effective no later than 90 days after receipt of those letters. *See* 40 Pa.C.S.A. § 6124(c)(2) (90 days advance notice to hospital plan corporations); *see also* 31 Pa.Code § 301.124 (60 days advance notice to HMOs). The public hearings and recommendation provisions of Section 6124 would not have applied to CHOP's action since the letter agreement did not involve "contracts with hospitals having more than 5% of the beds in the area served by a hospital plan corporation." *See* 40 Pa.C.S.A. § 6124(c)(3). In any case, the PID did not take any action in response to CHOP's letter.

Accordingly, defendants' motion to dismiss the complaint will be denied. An appropriate Order follows.