NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1487
_____

IN RE: ASPARTAME ANTITRUST LITIGATION

NOG, INC; SORBEE INTERNATIONAL, LTD.,
                                    Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court  No. 2-06-cv-01732
District Judge: The Honorable Legrome D. Davis
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 25, 2011

Before: McKee, *Chief Judge*, and SMITH, *Circuit Judges*
and STEARNS, *District Judge*[*]

(Filed: January 28, 2011)

_____

OPINION
_____

SMITH, *Circuit Judge*.

[*] The Honorable Richard G. Stearns, United States District Judge for the District of Massachusetts, sitting by designation.

1

This is an antitrust matter arising under Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs Nog, Inc. and Sorbee International, Ltd. represent a putative class of direct purchasers of Aspartame, an artificial sweetening product. Defendants are producers of Aspartame and entities related to its production, distribution, and supply. According to the complaint, defendants conspired to, *inter alia*, fix the price of Aspartame. Plaintiffs allege that this anticompetitive activity began no later than January 1, 1993, and that it persisted until December 31, 2003. The complaint characterizes this time frame as the class period.

Plaintiffs commenced suit on April 25, 2006. Before this date, however, it had been a number of years since either entity actually purchased Aspartame. Sorbee's last product acquisition occurred in 2001. Nog had not purchased the sweetener since 1995. Defendants zeroed in on this time lapse and moved to dismiss the complaint for falling outside of the four-year statute of limitations applicable to federal antitrust claims. Plaintiffs defeated the motion by attributing any delay to defendants' efforts to fraudulently conceal their anticompetitive behavior. In a thorough memorandum addressing the motion, the District Court recognized that plaintiffs' factual allegations were "not robust." At the same time, the Court emphasized that statute of limitations issues generally should be adjudicated "on a developed factual record." Thus, the parties were permitted to proceed to discovery.

2

Defendants deposed two key witnesses during the discovery period. The first was Nog's president and Rule 30(b)(6) designee, Bruce Ritenburg III. According to Ritenburg, Nog purchased Aspartame from defendant NutraSweet on three occasions in 1994 and 1995. The company procured a total of 13.23 pounds of the product, for which it paid $454.00. Ritenburg testified that at the time of their purchase, NutraSweet was the lone supplier in the market. He stated that although he believed "the price [for Aspartame] was out of sight," no one at Nog complained to NutraSweet or attempted to negotiate a price reduction. Ritenburg also conceded that he made no effort to investigate the price of Aspartame or the Aspartame market. When pressed, Ritenburg acknowledged that he "didn't take any steps [between 1993 and 2003] to investigate [Nog's] claims or to exercise due diligence." He added, "I guess I didn't take it too seriously as far as getting out there and investigating all of these things."

David Waxler, Sorbee's vice president and 30(b)(6) designee, provided a similar account. Between 1997 and 2001, Sorbee purchased at least $47,500 worth of Aspartame. Waxler was unable to say how Sorbee determined an appropriate purchase price. He did not know whether Sorbee negotiated a price or whether the company made any attempt to procure Aspartame at a lower rate. Furthermore, Waxler was unable to answer the most basic questions concerning the Aspartame market; he admitted that he had no understanding of the balance of supply and

3

demand, the fluctuation in the price of raw materials, or the prevailing price tendered by other direct purchasers. At one point, defense counsel asked, "Is there anything that you know that the company did during th[e class] period to exercise due diligence?" Waxler responded, "No."

Defendants eventually moved for summary judgment on statute of limitations grounds. The District Court granted the motion and held that (1) plaintiffs' Sherman Act claim accrued well outside the four-year period within which antitrust plaintiffs must initiate suit, and (2) plaintiffs failed to come forth with sufficient evidence to toll the limitations period under the doctrine of fraudulent concealment. Plaintiffs later sought reconsideration of this ruling, but their request was denied. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we review the order granting summary judgment de novo, *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).

A suit under the Sherman Act must be "commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. "[A]n antitrust cause of action generally 'accrues . . . when a defendant commits an act that injures a plaintiff's business.'" *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 105-06 (3d Cir. 2010) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971)). A plaintiff suffers antitrust injury by purchasing a product whose price was anticompetitively fixed. *See Klehr v. A.O. Smith Corp.*, 521 U.S.

4

179, 189 (1997). There is no question here that the plaintiffs' injury—assuming they suffered one—occurred well outside the four years allotted by statute. Plaintiffs attempt to overcome this shortcoming by invoking the equitable doctrine of fraudulent concealment.

The doctrine of fraudulent concealment works to toll the limitations period set forth by statute "when a plaintiff's cause of action has been obscured by the defendant's conduct." *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 160 (3d Cir. 2002), *cert. denied*, 538 U.S. 977 (2003). For the doctrine to apply, the plaintiff must prove the existence of the following: "(1) fraudulent concealment; (2) failure on the part of the plaintiff to discover his cause of action notwithstanding such concealment; and (3) that such failure to discover occurred [notwithstanding] the exercise of due care on the part of the plaintiff." *Id.* (quoting 70 A.L.R. 498 (1984)). At summary judgment, the plaintiff must come forward with evidence to support each of these three prerequisites. *See Forbes v. Eagleson*, 228 F.3d 471, 487 (3d Cir. 2000) ("Absent evidence to support these findings there is no genuine dispute of material fact on the issue and the defendants are entitled to summary judgment."), *cert. denied*, 533 U.S. 929 (2001).

The District Court held that plaintiffs failed to come forth with evidence sufficient to satisfy either the second or third elements of the fraudulent concealment inquiry. We need not address the second element, for we find that the

5

third element is dispositive here.  Even if we assume that defendants fraudulently concealed their anticompetitive conduct, there is simply no evidence to show that plaintiffs exercised the level of due care necessary to toll the limitations period.

A plaintiff who neglects to "take reasonable measures to uncover the existence of injury" is not entitled to the benefit of the fraudulent concealment doctrine. *Id.* at 486 (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1390 (3d Cir. 1994)).  It is undisputed that neither Nog nor Sorbee made any attempt to ensure that the price they paid for Aspartame was not the product of price-fixing.  In fact, when asked what steps their respective employers took to exercise due care during the class period, both 30(b)(6) designees admitted that they took none.  Plaintiffs contend that their complete inactivity is justified by the sophistication of defendants' concealment; in other words, they argue that until there is some outward indication of a price-fixing conspiracy, plaintiffs cannot be expected to do anything at all.

This argument would surely be more persuasive if it were factually accurate. It is not.  The District Court identified three "storm warnings" that, taken together, triggered a duty to exercise due care: (1) in the mid-1990s, plaintiffs believed that the purchase price of Aspartame was "out of sight," and defendant NutraSweet was the sole supplier in the market; (2) several anti-competition suits were filed in foreign jurisdictions naming some of the above-captioned defendants and alleging

6

price-fixing in the Aspartame market; and (3) the 1993 publication of an academic study that depicted the contours of the Aspartame market. According to the Court, these "'red flag[s]' . . . collectively revealed significant barriers to entry and lack of competition in the Aspartame market." We agree that the first two warnings identified by the Court triggered a duty to exercise reasonable diligence. Although these warnings were not particularly ominous, they certainly required plaintiffs to do *something*. *See Prudential Ins. Co. of Am. v. United States Gypsum Co.*, 359 F.3d 226, 238 (3d Cir. 2004) ("The more ominous the warnings, the more extensive the expected inquiry." (quoting *Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239, 255 (3d Cir. 2001))). Instead, both parties sat on their hands. Equity will not excuse such unjustified inactivity. The order of the District Court granting summary judgment will be affirmed.