

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-7-2007

# Ruehl v. Viacom Inc

Precedential or Non-Precedential: Precedential

Docket No. 06-1463

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Ruehl v. Viacom Inc" (2007). *2007 Decisions.* Paper 348.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/348

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-1463

———

JAMES H. RUEHL

v.

VIACOM, INC., successor by merger to CBS CORPORATION,
f/k/a WESTINGHOUSE ELECTRIC CORPORATION,

`Appellant

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 04-cv-0075)

District Judge: Honorable Donetta Ambrose

———

Argued December 12, 2006

Before: FUENTES and VAN ANTWERPEN, Circuit Judges,
and PADOVA,* District Judge.

(Filed: September 7, 2007 )

———————

 * Honorable John R. Padova, District Judge for the United
States District Court for the Eastern District of Pennsylvania,
sitting by designation.

1

Glen D. Nager (Argued)
Lawrence D. Rosenberg
Julia C. Ambrose
Thomas J. Davis
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

Amy E. Dias
Jones Day
31st Floor, One Mellon Ctr.
500 Grant Street
Pittsburgh, PA 15219

        Attorneys for Defendant-Appellant

Gary F. Lynch (Argued)
Carlson Lynch Ltd.
36 N. Jefferson Street
P.O. Box 7635
New Castle, PA 16107

Colleen Ramage Johnston
Rothman Gordon, P.C.
310 Grant Street, 3d Floor
Pittsburgh, PA 15219

        Attorneys for Plaintiff-Appellee

Robin S. Conrad
Shane Brennan
National Chamber Litigation Center, Inc.
1615 H Street, N.W.
Washington, D.C. 20062

        Counsel for Amicus Curiae, Chamber of Commerce of
          the United States of America

_____

OPINION

_____

FUENTES, Circuit Judge.

     This is an interlocutory appeal from the District Court's denial of Viacom's summary judgment motion. Viacom seeks to have James Ruehl's complaint under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., dismissed for failure to timely exhaust administrative remedies before the Equal Employment Opportunity Commission ("EEOC"). The District Court denied summary judgment after concluding that Ruehl's failure to exhaust was saved by equitable tolling or, in the alternative, excused by application of the "single filing rule." For the reasons that follow, we disagree with both rulings. We will reverse the judgment of the District Court and remand for entry of judgment in favor of Viacom.

## I.     Background

     Ruehl had worked for Viacom for twenty-four years, when, in March 1997, he was transferred from his position as director of accounting in the Energy Systems Business Unit to the tax department.[1] (App. at 293, 427.) In "late 1997 or early 1998," Ruehl attended a meeting at which his supervisors informed him that the tax department was being eliminated.[2] (App. at 291.) According to Ruehl, "[t]hey just informed me . . . that I was part of the transition team and that my job would be eliminated on August

_____

[1] For most of his career Ruehl worked for Westinghouse Electric Corporation ("WEC"). WEC was later purchased by CBS Corporation, which was succeeded via merger by Viacom, Inc. For ease of reference, we will refer to the defendant-appellant as "Viacom."

[2] The record supports Viacom's assertion that the meeting was on December 10, 1997, and Ruehl does not dispute that date. (See App. at 124, 429.)

31, 1998." (Id.) Approximately seven months later, on July 2, 1998, Ruehl received "[o]fficial notification" that his employment would be terminated, and that his last day would be August 31, 1998. (App. at 301.)

On his last day, Ruehl signed a "Separation Agreement, General Release And Promise Not to Sue" (the "Release"), which included a waiver of the right to sue for age discrimination under the ADEA. (App. at 146-47.) Ruehl testified that during the summer of 1998, before he signed the Release, he began to suspect that his age may have played a role in Viacom's decision to terminate him. (App. at 295.) Other terminated employees shared his suspicion and, on December 21, 1998, two former Viacom employees, Norman Mueller and Harry Bellas, filed EEOC charges, alleging that they were terminated as part of a "pattern and scheme of systematic discrimination against older workers." (App. at 151-54.)

In August 1999, Mueller and Bellas filed a collective action under the ADEA, in the Western District of Pennsylvania (the "Mueller-Bellas action"). The ADEA incorporates the collective action provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).[3] See 29 U.S.C. § 626(b) (incorporating § 216(b)). Unlike class actions governed by Rule 23 of the Federal Rules of Civil Procedure, in which potential class members may "opt out," collective actions under the FLSA require potential class members to notify the court of their desire to "opt in" to the action. See 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action

---

[3] Most courts, ours included, have not been methodical in their use of the terms "class action" and "collective action." The result is that numerous cases about FLSA "collective actions" use the Rule 23 term "class action." Here, we will quote cases that use the terms interchangeably, and we will refer to members of a "collective action" as part of a "class," but we will indicate where our analysis is limited to collective actions.

is brought.”).[4]

On March 14, 2001, the district court conditionally certified two sub-classes of plaintiffs in the Mueller-Bellas action.[5] (See

_____

[4] See also Whalen v. W.R. Grace & Co., 56 F.3d 504, 506 (3d Cir. 1995) (“Section 7(b) of the ADEA incorporates the enforcement ‘powers, remedies and procedures’ of § 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), which provides, in relevant part, that ‘[a]n action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.’”) (quoting § 216(b)); Grayson v. K Mart Corp., 79 F.3d 1086, 1106 (11th Cir. 1996) (“In creating a collective action procedure for ADEA actions, Congress clearly adopted the opt-in joinder procedures of section 216(b) of the FLSA and thus impliedly rejected the Rule 23 [opt-out] class action procedures applicable to Title VII actions.”).

[5] Subclass I, relating to Mueller’s and Bellas’s claim of discriminatory termination decisions, was defined as:

> All United States citizens employed by Westinghouse Electric Corporation . . . who were designated by Westinghouse as “Professionals” or “Managers” and who were, at any time between January 1, 1994 and December 31, 1999, involuntarily terminated from employment with Westinghouse (or who elected retirement after being informed that their employment with Westinghouse was going to be involuntarily terminated) and who were, at the time of such involuntary termination (or retirement), 40 years of age or older.

(App. at 192.) Subclass II, relating to Mueller’s and Bellas’s claim of discrimination through amendments to the Westinghouse Pension Plan in 1994, was defined as:

> All participants in the Westinghouse Pension Plan who were 40 years of age or older on January 1, 1995, and who took the “lump sum” option between

5

App. at 191-92.)  Ruehl opted in to both subclasses on March 28, 2001.  (See App. at 173.)  Viacom moved for decertification of the subclasses on May 13, 2002 arguing, among other things, that neither group of plaintiffs was "similarly situated" (as required for a collective action under the FLSA or ADEA) "because they have disparate factual and employment settings, there are substantial conflicts among members of each subclass, and there are numerous individualized defenses to their claims."  (App. at 193.)  On December 9, 2002, the district court granted Viacom's motion, decertified both subclasses, and dismissed the action in its entirety.  (See App. at 258.)  On March 20, 2003, the opt-in plaintiffs, including Ruehl, were notified of the decertification.  (See App. at 273; Ruehl Br. at 5.)

Nearly six months later, on October 14, 2003, Ruehl filed his first, independent charge of age discrimination with the EEOC.  (App. at 275; Ruehl Br. at 5.)  About four months later, on January 20, 2004, he commenced this action under the ADEA in the Western District of Pennsylvania. (App. at 280-83; Ruehl Br. at 5.)  On August 12, 2004, after limited discovery on whether Ruehl's waiver of ADEA claims was valid, Viacom filed a motion for summary judgment, arguing that Ruehl's EEOC charge and his district court complaint were both untimely.  On November 18, 2004, the Court denied the motion, holding that despite the facial untimeliness of Ruehl's EEOC charge under the ADEA, his claim could be saved by either the "single filing rule," which would allow him to rely on the filing date of Mueller's timely EEOC charge, or by equitable tolling based on alleged defects in the Release Ruehl signed on his last day at Viacom.

On March 9, 2005, the District Court certified its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), finding "substantial grounds for a difference of opinion exist as to both controlling issues of law," resolution of which "would materially advance the termination of this litigation" and "three related cases

---

January 1995, and December 31, 1999.

(Id.)

6

involving 67 plaintiffs." (App. at 22-23.) On January 31, 2006, we granted Viacom's petition for interlocutory review. (App. at 65.) This appeal followed.[6]

## II. Validity of Release of ADEA Claims

As a threshold matter, we will consider the validity of Ruehl's waiver of ADEA claims, which forms the basis of his equitable tolling argument. We agree with the District Court that the Release Ruehl signed violates the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626. The OWBPA imposes specific requirements for releases covering ADEA claims. In particular, § 626(f)(1)(F) of OWBPA provides that a waiver of claims is not knowing and voluntary unless, at a minimum, "(i) the individual is given a period of at least 21 days within which to consider the agreement; or (ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement." Id. In the latter situation, the employer must

> inform[] the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to:

---

[6] Our review of the District Court's denial of summary judgment is plenary. See Miller v. Bolger, 802 F.2d 660, 662 (3d Cir. 1986). We apply the same standard as the District Court: "Summary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Lexington Ins. Co. v. Western Pa. Hosp., 423 F.3d 318, 322 n.2 (3d Cir. 2005) (internal quotation marks omitted). We also exercise plenary review over the District Court's choice and interpretation of applicable tolling principles and its conclusion that facts permit equitable tolling of the statute of limitations. See Ebbert v. Daimler Chrysler Corp., 319 F.3d 103, 118 (3d Cir. 2003).

7

(i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and

(ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

Id. at § 626(f)(1)(H).[7]

In signing the Release, Ruehl affirmed that he was informed, in writing, by Viacom, about

(i) any class, unit or group of individuals covered by the Involuntary Separation Program, any eligibility factors for the Involuntary Separation Program, and any time limits applicable; and (ii) the job titles and ages of all individuals eligible or selected for the Involuntary Separation Program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

(App. at 147-48.) This language, drafted by Viacom, tracks the language of the OWBPA. It is undisputed, however, that Viacom failed to actually provide Ruehl with the required information.

Nonetheless, Viacom argues that the Release complies with the OWBPA because Viacom would have made the information available to Ruehl had he requested it. Ruehl responds that he did not request the information, but signed the waiver saying he did, because he was afraid that any request or modification of the

---

[7] The Release that Ruehl signed was undisputedly governed by § 626(f)(1)(H).

8

Release would delay his receipt of pension benefits. He argues that the Release is invalid under the plain language of § 626(f)(1)(H) because that provision places the burden on the employer to ensure that waivers are knowing and voluntary. Ruehl is correct.

The OWBPA places the burden on employers seeking releases to "inform[] the individual in writing" of the demographic information listed in § 626(f)(1)(H). Viacom never provided Ruehl the information, and the Release does not mention Ruehl's right to receive it, nor does it mention that the information was available upon request or how one might obtain the information. Ruehl's waiver was therefore not knowing and voluntary under the OWBPA. Having the employee *say* he was informed in writing—when he was not—does not satisfy the OWBPA's requirements.

Our strict construction of the OWBPA's disclosure requirement follows the direction of the Supreme Court in Oubre v. Energy Operations, Inc., 522 U.S. 422 (1998):

> The policy of the OWBPA is . . . to protect the rights and benefits of older workers. The OWBPA implements Congress' policy via a strict, unqualified statutory stricture on waivers, and we are bound to take Congress at its word. Congress imposed specific *duties on employers* who seek releases of certain claims created by statute. Congress delineated these duties with precision and without qualification . . . . Courts cannot with ease presume ratification of that which Congress forbids.
> . . .
> The statute creates a series of prerequisites for knowing and voluntary waivers and imposes *affirmative duties of disclosure* and waiting periods. The OWBPA governs the effect under federal law of waivers or releases on ADEA claims and *incorporates no exceptions or qualifications*.

Id. at 427 (emphasis added).

Consistent with Oubre, several Courts of Appeals have required strict compliance with the OWBPA's disclosure requirements. See Kruchowski v. Weyerhaeuser Co., 446 F.3d 1090, 1095 (10th Cir. 2006) (holding waiver invalid because employer defined "decisional unit" too broadly and "terminated employees [must] be informed of the 'decisional unit' at the time they consider whether to waive any ADEA claims."); Adams v. Ameritech Servs., Inc., 231 F.3d 414, 431 (7th Cir. 2000) (holding that "salary grade" instead of "job titles" is too general to furnish the kind of information the statute contemplates; and stating that "[a]s a form of worker protection legislation, the OWBPA demands information that allows people to ascertain whether they are being treated fairly vis-a-vis their peers."); Tung v. Texaco Inc., 150 F.3d 206, 209 (2d Cir. 1998) (holding release invalid where demographic information was given to employee on the day he signed the release, not 45 days before, in accordance the OWBPA).

Viacom argues that if we invalidate Ruehl's waiver, employers will be forced to attach voluminous amounts of unwanted material to every release. This, Viacom contends, would unduly burden both the employer and the employee.[8] But we are

---

[8] Viacom and *amicus curiae*, United States Chamber of Commerce, point to the fact that the EEOC asked for public comments on whether providing demographic information only "upon request" satisfies § 626(f)(1)(H). They argue that the EEOC's action shows that the plain language of the statute does not require appending the material to the release. They also point to comments received by the EEOC from the Equal Employment Advisory Council, which state that "a waiver will not be rendered invalid if the information [in subparagraph H is] made available for examination instead of being distributed in full . . . . [i]f the employer simply *informs all eligible employees that the additional information is available for inspection in the personnel office or other convenient location,* those interested will be able to access and examine it." See Viacom Br. at 57 (citing July 22, 1992 letter from Equal Employment Advisory Council to EEOC at 22, App. at 107) (emphasis added). Here, Viacom neither appended the required information to the Release nor informed employees in

not suggesting that Viacom was required to include boxes of paper with each and every waiver. We hold only that Ruehl's waiver was invalid because Viacom neither attached the required information to the Release nor adequately informed him of the relevant information, or how to get it, in any writing at all.

## III. Timeliness of EEOC Charge

Ruehl did not file an EEOC charge until October 14, 2003. That was 2135 days from the first adverse employment action—over five years late. Generally, a judicial complaint under the ADEA will be dismissed for failure to exhaust administrative remedies if a supporting EEOC charge was not filed within 180 or 300 days (depending on state law) of notification to the employee of the adverse employment action.[9] "Like Title VII, ADEA has

_____

writing about how to get it.

[9] Section 7(d) of the ADEA, 29 U.S.C. § 626(d), details this "exhaustion requirement":

> No civil action may be commenced by an individual under this section [authorizing civil actions] until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed-

> (1) within 180 days after the alleged unlawful practice occurred; or

> (2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

> Upon receiving such a charge, the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek

11

deferral provisions and the time for filing a charge depends on whether deferral applies. In deferral states, such as Pennsylvania, the charge must be filed within 300 days of the allegedly illegal act."[10] Seredinski v. Clifton Precision Prods. Co., 776 F.2d 56, 63 (3d Cir. 1985). Thus, Ruehl had 300 days from December 10, 1997, the day he was notified his job would be eliminated, to file an EEOC charge. See Watson v. Eastman Kodak Co., 235 F.3d 851, 852-53 (3d Cir. 2000) ("[A]n adverse employment action occurs, and the statute of limitations therefore begins to run, at the

> to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

Id. (footnote added).

[10] Section 633(b), explains what makes a state a "deferral state":

> In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated: Provided, That such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State law. If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority.

Id.

12

time the employee receives notice of that action and termination is a delayed but inevitable result.").

Absent an applicable saving doctrine, Ruehl's EEOC charge was untimely, and his case must be dismissed.[11]  The District Court held, however, that Ruehl's claim was saved by the doctrine of equitable tolling or, in the alternative, the single filing rule.  For the reasons that follow, we conclude that neither doctrine applies.

## A.  Equitable Tolling

The District Court denied summary judgment because it found there were material issues of fact about whether equitable tolling should be applied to Ruehl's charge filing deadline.  On appeal, Ruehl argues that equitable tolling is appropriate for two reasons: (1) Viacom actively misled him by "obtaining an invalid waiver of claims," that "lulled" him "into believing he had given up his ability to pursue a claim of age discrimination;" and (2) Viacom actively misled him by failing to make required disclosures under the OWBPA.  See Ruehl Br. at 25-26.  We conclude that Ruehl has not demonstrated extraordinary circumstances that would justify equitable tolling.

---

[11] In addition to the exhaustion requirement, the ADEA has a filing requirement, under which a judicial complaint must be filed within 90 days of either (1) receipt of a notice that a charge filed with the EEOC has been dismissed or (2) notice EEOC proceedings are being terminated by the EEOC.  See Sperling v. Hoffman-La Roche, Inc., 24 F.3d 463, 464 n.1 (3d Cir. 1994) (citing 29 U.S.C. § 626(e)).  In cases where a plaintiff has joined a class or collective action complaint, and certification was denied, or a conditionally certified class was decertified, courts have held that an individual judicial complaint must be filed within ninety (90) days of the denial of certification or decertification.  See, e.g., Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1391-92 (11th Cir. 1998); Basch v. Ground Round, Inc., 139 F.3d 6, 11 (1st Cir. 1998).  We need not consider whether Ruehl's judicial complaint was timely because, for the reasons we explain below, Ruehl has failed to meet the administrative exhaustion requirement.

13

The ADEA's timely exhaustion requirement is a non-jurisdictional prerequisite that, like a statute of limitations, is subject to equitable tolling. Commc'ns Workers of Am. v. N. J. Dept. of Pers., 282 F.3d 213, 216-17 (3d Cir. 2002) (hereinafter "Communications Workers"). Equitable tolling stops the statute of limitations from running when an EEOC charge's accrual date has already passed. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994).

In Oshiver, we explained two requirements for equitable tolling in an employment discrimination case:

> the equitable tolling doctrine may excuse the plaintiff's non-compliance with the statutory limitations provision at issue when it appears that (1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge, *and* (2) this deception *caused* the plaintiff's non-compliance with the limitations provision.

Id. (emphasis added). In addition, "equitable tolling requires the plaintiff to demonstrate that he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim." In re Mushroom Transp. Co., 382 F.3d 325, 339 (3d Cir. 2004) (internal quotation marks omitted); see also Hart v. J.T. Baker Chem. Co., 598 F.2d 829, 834 (3d Cir. 1979) (denying equitable tolling although employee was given four reasons for her discharge, none related to her gender, "her suspicions [of gender discrimination] were sufficient to lead a reasonable person to inquire further into the reasons for her discharge").

Ruehl argues, first, that he was "actively misled" by the invalid Release into believing he had waived all claims under the ADEA. The problem with this argument is that Ruehl alleges a misrepresentation of law, not of fact. Although Ruehl may have been misled by the presentation of an invalid release, this did not cause his late filing because he, like everyone, has access to the law. See Utah Power & Light Co. v. Fed. Ins. Co., 983 F.2d 1549, 1556 (10th Cir. 1993) ("[N]o one can be deceived by a

14

misrepresentation of law because everyone has access to the law . . . ."). Had he been diligent, Ruehl would have discovered that the Release was invalid in time to file a charge. See Mushroom, 382 F.3d at 339 (requiring, for equitable tolling, that plaintiff show reasonable diligence would not have revealed essential information bearing on his or her claim). Indeed, Ruehl had reason to suspect the Release was invalid because it stated—and he affirmed—that he had seen demographic information, even though none had been provided.

Ruehl argues, second, that there are material issues of fact about whether Viacom actively misled him by failing to disclose OWBPA information. He maintains that this information would have revealed age discrimination and undermined Viacom's non-discriminatory explanation for his termination. But even assuming we agree with Ruehl that, depending on what the disclosures reveal, a jury could infer that Viacom actively misled him as "part of an intentional plan to hide vital information from its employees," Ruehl's diligence is also in issue. (See App. at 17.)

Ruehl cannot benefit from equitable tolling unless he shows *both* that Viacom actively misled him about the reason for his discharge,[12] *and* that this deception *caused* his late filing. See

---

[12] We express no opinion about whether Ruehl has established a factual basis for his claim that Viacom actively misled him, but we reject Viacom's legal argument that Ruehl cannot show "actively misleading" conduct under Oshiver based on a failure to disclose under the OWBPA. See Meyer v. Riegel Prods. Co., 720 F.2d 303, 308-09 (3d Cir. 1983) (tolling the statute of limitations on EEOC charge where employer told employee he was being fired because of corporate reorganization, but omitted the fact that a younger employee had been hired to take over his job); Bonham v. Dresser Indus., Inc., 569 F.2d 187, 193 (3d Cir. 1977) ("[C]ases may arise where the employer's own acts *or omissions* have lulled the plaintiff into foregoing prompt attempts to vindicate his rights.") (quoted in Meyer, 720 F.2d at 307 and Oshiver, 38 F.3d at 1387) (emphasis added). Viacom further insists that the only legal consequence for failing to follow the dictates of

15

<u>Oshiver</u>, 38 F.3d at 1387.  The record in this case does not a permit a finding that Ruehl met the second requirement.

Specifically, Ruehl admitted at his deposition that he first thought he had been subjected to age discrimination in the summer of 1998:

> I guess when I was probably the oldest person in the department that was let go, and I was the only one not offered a job with the outsourcer. . . . [around] Summer of '98 I guess, you know, around the time of my termination . . . .

(App. at 295.)  Ruehl also admitted that in 1994 he thought there may have been age discrimination at Viacom when, in his presence, Viacom's Chief Financial Officer referred to an older employee as a "blocker," and said that Viacom needed to "get him out of here." (App. at 292.)  Ruehl perceived this at the time to be the type of "comments [that] were probably made about me the same way when I wasn't in the room."  (<u>Id.</u>)

These facts, which would have supported Ruehl's cause of action, were known to him by the time he was terminated in August 1998.  He has failed to explain how Viacom's failure to disclose under the OWBPA, however misleading, caused his failure to pursue a claim based on information he already had.  Ruehl has

---

OWBPA is that Ruehl's waiver is invalid, and that it can have no bearing on equitable tolling.  Viacom Br. at 47.  This argument misses the point: our task is to determine whether there is a material issue of fact regarding whether Viacom actively misled Ruehl about his cause of action, and material omissions are relevant to that inquiry.  <u>See</u> <u>Mushroom</u>, 382 F.3d at 339 ("In assessing the finding that [the plaintiff] failed as a matter of law to exercise reasonable diligence for purposes of . . . equitable tolling, we are guided by the general rule that such determinations are typically within the jury's province unless the facts are so clear that reasonable minds cannot differ . . . .")  (internal quotation marks and citation omitted).

therefore failed to show the type of exceptional circumstances that warrant equitable tolling.

## B. "Single Filing Rule"

The District Court held, alternatively, that the single filing rule permits Ruehl, as a former plaintiff in the decertified Mueller-Bellas class, to "piggyback" on Mueller's EEOC charge, thereby dispensing with the requirement that he file a timely charge of his own.[13] The single filing (or "piggybacking") rule is a judge-made exception to the requirement that plaintiffs exhaust their administrative remedies prior to filing suit. Communications Workers, 282 F.3d at 217 ("Under the single filing rule doctrine, a plaintiff who has not filed an EEOC charge within the requisite time period can join a class action without satisfying either requirement—exhaustion and filing—if the original EEOC charge filed by the plaintiff who subsequently filed a class action had alleged class based discrimination in the EEOC charge."); Whalen v. W.R. Grace & Co., 56 F.3d 504, 506 (3d Cir. 1995) ("[The single filing rule] allows aggrieved individuals who failed to file the required . . . EEOC charge to join a class action brought by a plaintiff who had filed an EEOC charge alleging class-wide discrimination.").

### 1. Limitation of The Single Filing Rule to Class and Collective Actions

Beginning with Lusardi v. Lechner, 855 F.2d 1062 (3d Cir. 1988), we have limited application of the single filing rule to the collective and class action context. In Lusardi, the district court decertified a collective action filed by Xerox workers under the ADEA because the plaintiffs did not satisfy the ADEA's "similarly situated" requirement. 855 F.2d at 1066; see also 29 U.S.C. § 216(b) ("An action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). The court relied in part on the fact

---

[13] We express no opinion on whether Mueller's charge was timely filed.

that not every class member had filed an individual EEOC charge. See id. at 1076.  On appeal, we remanded the case to the district court for reconsideration, because we agreed with *amicus* EEOC's position that a single, representative complaint can achieve the notice and conciliation purpose of the EEOC filing, "[s]o long as class issues are alleged."[14]  Id. at 1078; accord Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 52 (3d Cir. 1989).[15]

On remand, the district court again decertified the class, implementing our holding, but still finding that the plaintiffs were not "similarly situated," because

> [t]he members of the proposed class come from different departments, groups, organizations,

---

[14] We outlined the purpose of filing discrimination claims first with the EEOC in Anjelino v. New York Times Co., 200 F.3d 73 (3d Cir. 1999):

> The preliminary step of the filing of the EEOC charge and the receipt of the right to sue notification are essential parts of the statutory plan, designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action.  Because the aim of the statutory scheme is to resolve disputes by informal conciliation, prior to litigation, suits in the district court are limited to matters of which the EEOC has had notice and a chance, if appropriate, to settle.

Id. at 93 (internal quotation marks and citation omitted).

[15] We recognized in Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1099 n.10 (3d Cir. 1995) that Lockhart was effectively overruled on unrelated grounds by Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993), which rejected any requirement in ADEA actions, of "direct" evidence of discrimination, "outrageous" conduct by the employer, or proof that age was the predominant rather than a determinative factor in the employment decision.

sub-organizations, units and local offices within the Xerox organization. The opt-in plaintiffs performed different jobs at different geographic locations and were subject to different job actions concerning reductions in work force which occurred at various times as a result of various decisions by different supervisors made on a decentralized employee-by-employee basis.

Lusardi v. Xerox Corp., 122 F.R.D. 463, 465 (D.N.J. 1988).

Then, in Tolliver v. Xerox Corp., 918 F.2d 1052, 1055 (2d Cir. 1990), the Second Circuit considered an individual action brought by a former Lusardi class member who had not filed his own timely EEOC charge. Tolliver extended the single filing rule beyond the class action context, to any individual action where "it can fairly be said that no conciliatory purpose would be served by filing separate EEOC charges." Id. at 1058 (citation omitted). The court reasoned that the single filing rule can apply even where a class action would be inappropriate because the purpose of the administrative filing requirement, timely conciliation, is separate from the purposes of class certification. Id. at 1059. Importantly, the plaintiff's status as a former member of a decertified class was irrelevant to the holding.

We rejected the Second Circuit's approach in Whalen. 56 F.3d at 507. Whalen addressed whether plaintiffs who had not filed individual EEOC charges could join a previously-filed ADEA action, pursuant to Federal Rule of Civil Procedure 15(b). Id. at 505-06. The five plaintiffs in the original action had filed a joint complaint, but not a collective action. Id. at 505. The prospective plaintiffs argued that the single filing rule applied, and the district court, relying on Tolliver, permitted the joinder. Id. at 506. We reversed, explaining that under Lusardi, "[t]here is no suggestion that filing a charge with allegations broad enough to support a subsequent class action lawsuit alleviates the burden of filing the class action itself, with the attendant requirement of class certification." Id. at 507.

We further emphasized the connection between the

19

certification process and proper application of the single filing rule in Communications Workers, 282 F.3d at 218. In that case, a union filed an EEOC charge alleging racial discrimination by the State of New Jersey. Id. at 215. The union then filed a timely complaint, asserting associational standing, and alleging discrimination against all of the union's black and Hispanic members, without naming any individuals. Id. About a year later, a separate chapter of the same union successfully intervened in the original action, but the district court dismissed its complaint as time barred. Id. at 215-16. On appeal, the chapter argued that it could piggyback on the union's timely complaint because the union had filed on behalf of all its members, and that was functionally the same as a class action. Id. at 217. We disagreed, reasoning that "acceptance of [that] argument would eviscerate the distinction between an action filed by an entity based on associational standing . . . and class actions," with "*the attendant requirements of class certifications and the associated procedural due notice and fairness safeguards as provided by Fed. R. Civ. P. Rule 23*." Id. at 218 (emphasis added).

The focus of our early cases, Lusardi and Lockhart, was that in the limited context of a class or collective action, a single EEOC charge alleging class-wide discrimination satisfies the exhaustion requirement for all class plaintiffs because it achieves the EEOC goals of notice and conciliation. Our later cases, Whalen and Communications Workers, emphasized that the single filing rule is limited to plaintiffs who have undergone the class certification process, because that process ensures notice and possible conciliation of each class member's claims. We have not squarely addressed whether the single filing rule applies in individual actions after decertification.[16]

---

[16] Courts in the Western District of Pennsylvania have generally applied it post-decertification, whereas courts in the Eastern District of Pennsylvania have generally not. Compare Ray v. Consol. Rail Corp., No. 98-1757, at 7 (W.D. Pa. June 29, 1999); McKernan v. Consol. Rail Corp., No. 98-1758, at 6 (W.D. Pa. June 29, 1999); Hilton v. Consol. Rail Corp., No. 98-364, at 6 (W.D. Pa. June 23, 1999); Mayo v. Consol. Rail Corp., 96-656, at 9-10 (W.D. Pa. June 23, 1999); In re Consol. Rail Corp. A.D.A. Litig., Nos.

20

Ruehl argues that because the Mueller-Bellas action had been conditionally certified, Ruehl's subsequent individual action remains in the "context of a class action" and the single filing rule should therefore be available to him even after decertification. In our view, this proposed extension of the single filing rule does not follow from our precedent, and would make little sense under the facts of this case. We conclude that when a class is decertified because the plaintiffs are not "similarly situated," those plaintiffs are in a qualitatively different position than plaintiffs in a certified class, and our reasons for applying the single filing rule—in Lusardi, Lockhart, Whalen, and Communications Workers—are inapplicable.

## 2. Application of the Single Filing Rule after Decertification

The district court explained in its well-reasoned and exhaustive opinion decertifying the Mueller-Bellas class, that its conditional certification under the ADEA had been granted because there was sufficient evidence of age-based discrimination to proceed with notice and initial discovery. Mueller v. CBS, Inc., No. 99-1310, at 6 (W.D. Pa. Dec. 9, 2002) (App. at 194); see also Sperling v. Hoffman La-Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988) (explaining that at the initial notice stage, plaintiffs need only make "substantial allegations" that they were collectively "the victims of a single decision, policy, or plan infected by discrimination."). The court remarked that at the "notice stage" the standard for conditional certification is "comparatively liberal." (App. at 194.)

_____

98-1669, 98-1671, 98-1672, and 98-1759, at 9-10 (W.D. Pa. Mar. 23, 1999); with Foreman v. Consol. Rail Corp., No. 99-2804, 2000 WL 233471, at *1-2 (E.D. Pa. Feb. 25, 2000); Payne v. Consol. Rail Corp., No. 99-2801, 2000 WL 190229, at *4 (E.D. Pa. Feb. 10, 2000); Wills v. Consol. Rail Corp., No. 99-2811, 2000 WL 365954, *2 -3 (E.D. Pa. Apr. 10, 2000); Koban v. Consol. Rail Corp., No. 98-5872, 1999 WL 672657, at *2 (E.D. Pa. Aug. 13, 1999).

21

On reconsideration, however, the district court decertified the Mueller-Bellas class, applying the factors set out in Plummer v. General Electric Co., 93 F.R.D. 311 (E.D. Pa. 1981), and Lusardi, 118 F.R.D. 351 (D.N.J. 1987).[17] Based on these factors, the court concluded that the class members were not "similarly situated":

> Plaintiffs are suggesting . . . that we continue to "slice and dice" a group of nearly 1,500 terminated employees until we find two or three who are not *hopelessly disparate in time, location, management, who have no internal conflicts regarding*

---

[17] At the "reconsideration phase," after potential class members have filed their consents to opt in and after there has been further discovery to support the plaintiffs' allegations, a district court may revoke conditional certification if the proposed class does not meet FLSA's "similarly situated" requirement. Neither FLSA nor the ADEA define the term "similarly situated," but we have approved of the balancing of factors in Plummer, 93 F.R.D. 311, and Lusardi, 118 F.R.D. 351. See Lockhart, 879 F.2d at 51 (approving and applying these factors). A representative (but not exhaustive or mandatory) list of relevant factors includes whether the plaintiffs are employed in the same corporate department, division and location; advanced similar claims of age discrimination; sought substantially the same form of relief; and had similar salaries and circumstances of employment. See id. at 51(citing Plummer, 93 F.R.D. at 312); Lusardi, 118 F.R.D. at 358-59. Plaintiffs may also be found dissimilar on the basis of case management issues, including individualized defenses. See Lusardi, 855 F.2d at 1074-75 ("Whether a class action is inappropriate . . . because of the disparate individual defenses . . . [is] entrusted to the district court's sound discretion."). Under the ADEA, employers may defend age discrimination claims on the ground that the disparate treatment was based on "reasonable factors other than age," 29 U.S.C. § 623(f)(1), such as termination for good cause, lack of a bona fide occupational qualification, business necessity, seniority, the implications of a bona fide benefit plan, and waiver, Mueller, No. 99-1310, at 9 (App. at 197.).

22

*supervision, and who are subject to only one or two generalized defenses* . . . . I decline to accept Plaintiffs' suggestion that I resolve their factual disparity problems for them . . . .

Mueller, No. 99-1310, at 59 (emphasis added) (App. at 247.) These reasons for decertification strongly counsel against application of the single filing rule in Ruehl's individual action.

First, and most importantly, plaintiffs whose individual claims were "hopelessly disparate in time, location, management," with "internal conflicts regarding supervision," "subject to only one or two generalized defenses," are not different than the individual plaintiffs in Tolliver or Whalen by virtue of the fact that they were once members of a conditionally certified class. See Whalen, 56 F.3d at 507. Conditional certification of the Mueller-Bellas action, as we have explained, *only* meant that there were *allegations* of class-wide discrimination. When, at the reconsideration phase, the facts of the case came to light, the court determined that the class members were not similar enough to proceed with their class-wide claims.

Second, we believe dissimilarity frustrates the EEOC's goals of notice and conciliation—we stand by our disagreement with Tolliver in this regard. Notice is intended to inform an employer that "a complaint has been lodged against him and gives him the opportunity to take remedial action." Bihler v. Singer Co., 710 F.2d 96, 99 (3d Cir. 1983) (internal quotation marks omitted). In this case, the only aspect of the Mueller and Bellas charges applicable to Ruehl was the class-wide allegation that Viacom perpetrated a "pattern and scheme of systematic discrimination against older workers." (App. at 151- 54.) Even assuming a pattern and scheme, we cannot fairly presume that Viacom was notified of anything but the class-wide claims, which the district court determined were overwhelmed by the plaintiffs' individual differences. By the time Ruehl filed his consent to opt in to the Mueller-Bellas action—and had notified anyone of his individual claim—it was too late for Viacom to take remedial action.

Nor does Ruehl provide any reason to assume that

23

conciliation of Ruehl's individual claims would have been futile. The EEOC's role under the ADEA is "to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance . . . through informal methods of conciliation, conference, and persuasion." See 29 U.S.C. § 626(b). Fruitless negotiation of class-wide claims tells us nothing about the prospects for conciliation of individual claims that involve potentially different conduct and different defenses.

Third, and finally, we are unmoved by Ruehl's prediction that failure to apply the single filing rule after decertification will deter plaintiffs from joining a class, for fear that their time to file a charge will run out while certification is pending. A straightforward extension of our holding in Sperling v. Hoffmann-La Roche, Inc., 24 F.3d 463 (3d Cir. 1994), alleviates this problem by permitting tolling of the charge filing period, after an ADEA plaintiff has opted into a collective action, until decertification. See id. at 468 ("Our holding that ADEA's statute of limitations is tolled for eligible class members by the initial filing of a representative complaint, as long as the representative nature of the action is clear on the complaint's face, is foreshadowed by our opinion in Lusardi, 855 F.2d 1062").[18] Here,

---

[18] See also Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1392 (11th Cir. 1998) (tolling the EEOC charge-filing period during the pendency of plaintiffs' participation in ADEA collective actions); McDonald v. Sec'y of Health & Human Servs., 834 F.2d 1085, 1092 (1st Cir. 1987) (holding that the principles of Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974), permitting tolling of the time to file a complaint during the pendency of a class action, are "generally applicable" to administrative limitations periods, so that after a class action was decertified on appeal, the class members could "go forward from the point where they had left off during pendency of the class action" and exhaust their administrative remedies); Sharpe v. Am. Express Co., 689 F. Supp. 294, 300 (S.D.N.Y. 1988) ("Applying the tolling rule to the filing of administrative claims will have the same salutary effect as exists for the filing of lawsuits. In both cases, tolling the statute of limitations during the pendency of a class action will avoid

24

however, even if we tolled Ruehl's charge filing period during the pendency of the Mueller-Bellas action, his charge would still be untimely.

For these reasons, we hold that the single filing rule is not available to former members of a collective action that is decertified because the plaintiffs are not "similarly situated."[19]  It is therefore not applicable in Ruehl's case.

## III.    Conclusion

Ruehl's EEOC charge was filed over five years too late. Because he was aware of a factual basis for his claim in time to file a charge, and Viacom's allegedly misleading behavior in procuring an invalid waiver did not cause his late filing, Ruehl is ineligible for equitable tolling.  In addition, because the Mueller-Bellas action was decertified on grounds of dissimilarity, he cannot piggyback on anyone else's timely filed charge.  Without equitable tolling or piggybacking, Ruehl fails to satisfy the ADEA's timely exhaustion requirement.  We will therefore reverse the District Court's order and remand for entry of summary judgment in favor of Viacom.

---

encouraging all putative class members to file separate claims with the EEOC . . . .").

[19]  Our holding is limited to a decertified collective action. We express no opinion about application of the rule in the context of a decertified, Rule 23 class action.