NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3236
_____

WILLIAM BAILEY, JR.; DONALD BEYNON, JR.;
ANNA MARIE BOCHTER; JOHN BROSNAHAN; ARNOLD FURTH;
GERALD GOLDBERG; GERALD GREGG; DAVID KASUBA;
ROBERT KRAUSE; ROBERT PITULSKI; ROBERT POLLICE;
URBAN SCHNEIDER

v.

VIACOM INC, successor by merger to CBS CORPORATION,
FKA Westinghouse Electric Corporation

William Bailey; John Brosnahan; Gerald Goldberg;
Robert Pitulski; Robert Pollice,
                                        Appellants
_____

On Appeal from the United Stated District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-04-cv-00607)
District Judge:  Honorable Donetta W. Ambrose
_____

No. 10-3237
_____

JOHN BARRETT; WILLIAM BRADFORD; GEORGE CHAMBERS;
JAMES CHISHOLM; LOUIS DANNECKER; RONALD DELONG;
ROBERT DURR; DANA GABEL; JOSEPH GIACOMIN; DELLA HAMILL;
RALPH ITZO; CHARLES KIEHL; LEROY MILLER; VIRGINIE RAVAREAU;
LEENDERT RINGLEVER; NIZAM SHAIKH; JOHN WAGLE, III; JAMES WEST;
MELVIN WILKERSON; DOROTHY WILLIAMS; TERRY WOOD;
RONALD ZINSKI; JOSEPH ZOLKOWSKI; SANDRA SNYDER, as
Executrix of the Estate of Frank Snyder; TRENTON DOANE

v.

VIACOM INC, successor by merger to CBS Corporation,
FKA Westinghouse Electric Corporation

John Barrett, William Bradford, James Chisolm, Ronald DeLong,
Robert Durr, Dana Gabel, Joseph Giacomin, Leendert Ringlever,
James West, Terry Wood,
Appellants
_____

On Appeal from the United Stated District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-04-cv-00608)
District Judge:  Honorable Donetta W. Ambrose
_____

No. 10-3238
_____

JOHN ALBRIGHT; JOHN BREWER; CONNIE BROOME; HERBERT COOPER;
EVERARD ELIJAH; BOBBY FRISCO; ROBIN GROVES; JAMES HOUSTON;
DONALD JENNINGS; DANNY LONG; JAMES PETERSON; MARVIN POOLE;
MICHAEL RUSNAK; JOHN SCHWEITZER; RICHARD SIMPSON;
PAUL STADTERMAN; ROBERT TODD; FRED TYNER; LYNETTE WILLIAMS;
WALLACE WRIGHT

v.

VIACOM INC, successor by merger to CBS Corporation,
FKA Westinghouse Electric Corporation

John Albright, John Brewer, Bobby Frisco, James Houston,
Marvin Poole, Paul Stadterman, Robert Todd, Lynnette Williams,
Appellants
_____

On Appeal from the United Stated District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-04-cv-00609)
District Judge:  Honorable Donetta W. Ambrose
_____

2

Submitted Under Third Circuit LAR 34.1
May 12, 2011

Before:  SMITH, CHAGARES, and VANASKIE, Circuit Judges

(Opinion Filed:  June 16, 2011)
_____

OPINION OF THE COURT
_____

VANASKIE, Circuit Judge.

This consolidated appeal consists of three cases in which terminated employees accuse Viacom of age discrimination.  The District Court granted Viacom's motions for summary judgment, and we will affirm the Judgments of the District Court.

I.

As we write only for the parties, who are familiar with the facts and procedural history of this case, we relate only those facts necessary to our analysis.

This litigation began in 1999, when three former employees of Westinghouse Electric Corporation ("Westinghouse") sued Viacom,[1] alleging violations of the Age Discrimination in Employment Act ("ADEA").  That suit was conditionally certified as a collective action and several other former employees opted in to the suit.  The action was later decertified, however, forcing individuals who had opted in to bring independent actions if they wished to pursue claims against Viacom.

On April 22, 2004, several former opt-in plaintiffs brought the three actions that are the subject of this appeal.  Shortly thereafter, the District Court stayed those suits

_____
[1]Westinghouse later became known as CBS Corporation.  Viacom is CBS's successor.

pending the resolution of an interlocutory appeal in a related ADEA action against Viacom. In that case, *Ruehl v. Viacom, Inc.*, 500 F.3d 375 (3d Cir. 2007), we considered whether a terminated employee's untimely filed action was subject to equitable tolling. Viacom obtained from Ruehl, the employee, a written waiver of ADEA claims but failed to provide him with employee demographic data required by the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626.[1] *Id.* at 381. We explained that equitable tolling applies only if "(1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge, *and* (2) this deception *caused* the plaintiff's non-compliance with the limitations provision." *Id.* at 384 (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994)) (emphasis added in *Ruehl*). Although we noted that "material omissions are relevant" to whether Viacom actively misled Ruehl, we declined to decide that issue. *Id.* at 385 n.12. Instead, we determined that equitable tolling did not apply because Ruehl could not show that Viacom's alleged deception caused him to bring his claim late. *Id.* at 385.

After we decided *Ruehl*, litigation in the instant three cases resumed. As in *Ruehl*, the Appellants here brought untimely actions but argued that equitable tolling applied because Viacom failed to provide employee demographic data required by OWBPA.

---

[1] The OWBPA describes an employer's obligations when it requests a waiver "in connection with an exit incentive or other employment termination program offered to a group or class of employees." 29 U.S.C. § 626(f)(1)(H). For the waiver to be effective, the employer must inform the terminated employee of the existence of such "class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program," as well as "the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program." 29 U.S.C. § 626(f)(1)(H)(i) & (ii).

Viacom first moved for summary judgment with respect to the claims of Bradford, West, and Wood on the ground that they were not entitled to the demographic data because they were not part of a "group termination," the scenario to which the OWBPA obligation to provide demographic data applies. The following evidence supported the claims of Bradford, West, and Wood that they were part of a group termination:

- Bradford was given a letter stating that he was being let go "[i]n conjunction with the reorganization of" his company. (A. 2003.) He also "became aware" that other employees with similar positions were being terminated at around the same time. (A. 2001.) Additionally, he was given forty-five days to sign a severance agreement, the same amount of time the OWBPA mandates for such agreements in group terminations.

- West stated that one of his superiors urged him to retire by telling him that "corporate ha[d] made a pot full of money available for people just like [him]." (A. 2013 (internal quotation marks omitted).) West was told that he "fit the list" based on his salary and years of experience. (*Id.* (internal quotation marks omitted).) West's boss told him, "I need you to do this for me." (*Id.* (internal quotation marks omitted).) West also stated that he signed a severance agreement.

- Wood stated that when his employment was terminated he was given forty-five days to sign a severance agreement.

Viacom, on the other hand, presented affidavits of managerial employees stating that Bradford, West, and Wood were not part of a group termination. The District Court agreed with Viacom and granted its motion for summary judgment in those three cases.

5

Discovery in the remaining cases proceeded. The remaining plaintiffs asked Viacom to produce an eighteen-volume appendix from the prior, decertified action. That appendix included, among many other things, Dr. Charles Mann's deposition transcript and statistical analysis of Viacom's company-wide employment data. The plaintiffs' request did not identify Dr. Mann by name or state an intention to use him as an expert. Viacom objected to this request and the appendix was never produced. Viacom later served interrogatories asking the plaintiffs to identify expert witnesses they intended to use. The plaintiffs responded that they had not retained an expert but would notify Viacom if they did.

The plaintiffs later asked Viacom to produce company-wide employment data from the decertified action. Viacom objected and the plaintiffs did not move to compel production before the close of fact and expert discovery. Discovery was, however, extended for the limited purpose of taking depositions, and on the last day of the extended discovery period the plaintiffs filed a motion to compel production of the employment data. The District Court asked the plaintiffs how they intended to use the data in light of the fact that they had not disclosed an expert witness. The plaintiffs responded that they did not need an expert. The District Court denied the motion to compel because it was untimely and because "the production of the data would serve no purpose because the Plaintiffs had no expert who could testify as to the import of the data." (A. 111.)

Viacom moved for summary judgment after the close of discovery. Among other things, Viacom argued that equitable tolling did not apply because the plaintiffs could not

6

show that Viacom actively misled them about the reason their employment was terminated. In opposition to Viacom's motion, the plaintiffs argued that Dr. Mann's expert report showed that Viacom's reasons for terminating them were pretextual. Viacom then moved to strike the report because the plaintiffs had not disclosed Dr. Mann as an expert. The District Court granted the motion to strike, rejecting the plaintiffs' argument that their request for the eighteen-volume appendix put Viacom on notice of their intention to use Dr. Mann as an expert.

The District Court then granted Viacom's motion for summary judgment, concluding that there was no genuine issue of material fact as to whether Viacom actively misled the plaintiffs. The Court explained that Viacom's failure to provide OWBPA data, by itself, did not amount to active misleading. Because the plaintiffs had no evidence that the data suggested age discrimination, or that Viacom intended to mislead its employees, they could not establish that equitable tolling applied. These plaintiffs, along with Bradford, West, and Wood, now appeal.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## A.

We will first address the District Court's decision to exclude Dr. Mann's report because this issue bears on the grant of summary judgment in favor of Viacom in all cases except those of Bradford, West, and Wood. We review the District Court's decision to strike Dr. Mann's report for abuse of discretion. *See Semper v. Santos*, 845

7

F.2d 1233, 1238 (3d Cir. 1988). We consider the following factors when deciding whether a district court abused its discretion:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court, and (4) bad faith or wilfulness in failing to comply with the district court's order.

*Konstantopolous v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997). Additionally, "the importance of the excluded testimony should be considered." *Id.* (internal quotation marks omitted). "[T]he exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *Id.* (internal quotation marks omitted).

When we consider these factors, we conclude that the District Court did not abuse its discretion. Appellants had ample opportunity during discovery to disclose their intention to use Dr. Mann as an expert but consistently neglected to do so. When Viacom served interrogatories directly asking Appellants to identify any experts they intended to use, they stated that they had not retained any. When Appellants attempted to compel the production of employment data, they explained that they did not need an expert. Appellants first alluded to Dr. Mann's report in their brief opposing Viacom's motion for summary judgment, after the close of discovery. We agree with the District Court that admitting the expert evidence at such a late juncture would prejudice Viacom, which rightly moved for summary judgment with the understanding that Appellants were not using expert testimony.

8

Appellants argue, as they did before the District Court, that their request for the appendix in the decertified action put Viacom on notice of their intention to use Dr. Mann as an expert. Appellants assert that their request "specifically identified the deposition transcript and report of Dr. Charles Mann." (Appellants' Br. at 78.) This is not true. The request did not mention Dr. Mann, or for that matter any expert. (*See* A. 3541-42.) Even if the request did somehow hint at Appellants' intent to use Dr. Mann, their subsequent responses to Viacom's interrogatories concerning expert disclosure conveyed a much clearer message that Appellants intended *not* to use Dr. Mann. Accordingly, the District Court did not abuse its discretion when it struck Dr. Mann's expert evidence.

B.

We will next consider the District Court's grant of summary judgment in favor of Viacom on the ground that equitable tolling did not apply to Appellants' claims. We exercise plenary review over the District Court's summary judgment order. *See Spence v. ESAB Group, Inc.*, 623 F.3d 212, 216 (3d Cir. 2010). It is undisputed that Appellants did not bring their claims in a timely fashion. Appellants' claims may survive, however, if equitable tolling applies. We have explained that

> ordinarily when plaintiffs seek to demonstrate a case for equitable tolling, and defendants seek summary judgment on the issue, a court must determine (1) whether there is sufficient evidence to support a finding that defendants engaged in affirmative acts of concealment designed to mislead the plaintiffs regarding facts supporting their Count I claim, (2) whether there is sufficient evidence to support a finding that plaintiffs exercised reasonable diligence, *and* (3) whether there is sufficient evidence to support a finding that plaintiffs were not aware, nor should they have been aware, of the facts supporting their claim until a time within the

9

> limitations period measured backwards from when the plaintiffs filed their complaint. Absent evidence to support these findings there is no genuine dispute of material fact on the issue and the defendants are entitled to summary judgment.

*Forbes v. Eagleson*, 228 F.3d 471, 487 (3d Cir. 2000). Appellants have the burden of establishing that equitable tolling applies. *See Courtney v. La Salle Univ.*, 124 F.3d 499, 505 (3d Cir. 1997).

The District Court concluded that equitable tolling did not apply because Appellants did not establish that Viacom "actively misled" them. Appellants argue that the District Court erred for several reasons. First, they maintain that Viacom's failure to provide OWBPA data, by itself, amounts to active misleading. We disagree. In *Ruehl*, we explained that "our task is to determine whether there is a material issue of fact regarding whether Viacom actively misled Ruehl about his cause of action, and material omissions are relevant to that inquiry." *Ruehl*, 500 F.3d at 385 n.12. In other words, Viacom's failure to provide OWBPA data was "relevant" to whether Viacom actively misled Ruehl, but it was not dispositive. The same analysis applies here. To establish that equitable tolling applies, Appellants must point to evidence showing that Viacom's failure to provide OWBPA data was "designed to mislead" them about the reason their employment was terminated. *See Forbes*, 228 F.3d at 487.

Appellants' claims that Viacom actively misled them would be bolstered if the omitted OWBPA data suggested age discrimination. Appellants, however, have failed to analyze the data. Instead, Appellants point to statements of Westinghouse's former CEO that allegedly suggest his company engaged in age discrimination by terminating certain

10

employees. But such statements, taken in isolation and out of context, are insufficient to suggest age discrimination.

Appellants further argue that they can prove active misleading by pointing to the deposition testimony of Jason Campbell, a human resources employee at Viacom. Campbell testified that he did not provide OWBPA data when he obtained ADEA waivers, and he admitted that he did not know why he did not provide the data. Campbell, however, was a fact witness in two individual cases. He was not, as Appellants wrongly assert, a witness designated to testify on behalf of Viacom pursuant to Federal Rule of Civil Procedure 30(b)(6). Accordingly, Campbell's testimony does not establish a company-wide practice of intentionally withholding OWBPA data from terminated employees.

Appellants also assert that Viacom has ignored their "repeated requests" for the OWBPA data. (Appellants' Br. at 71.) They do not, however, cite to a single instance when a terminated employee asked for the data but did not receive them. Instead, Appellants point to Viacom's refusal to produce employment data from the decertified action. It is not apparent, however, that these data are the same as the data Viacom was obligated to provide under the OWBPA. Because Appellants have no evidence that Viacom declined to produce the OWBPA data when asked, they have failed to bolster their claim that Viacom actively misled them.

Finally, Appellants cite to the District Court's summary judgment opinion in *Ruehl*, which concluded that there was a genuine issue of material fact as to whether Viacom's failure to provide OWBPA data amounted to active misleading. The "law of

11

the case" doctrine provides "that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). The doctrine plainly does not apply here because *Ruehl* was a different case. Moreover, we subsequently reversed the judgment of the District Court in *Ruehl*.

In sum, Appellants have failed to meet their burden of establishing that Viacom actively misled them. We will therefore affirm the District Court's grant of summary judgment.

## C.

Finally, we address the District Court's grant of summary judgment in favor of Viacom in the cases of Bradford, West, and Wood. Like the other Appellants, these individuals argued that equitable tolling applied because Viacom failed to provide OWBPA data when it obtained their waivers of ADEA claims. The District Court, however, concluded that equitable tolling did not apply because these Appellants were not part of a group termination and therefore not entitled to the OWBPA data.

The parties agree that a terminated employee who waives age discrimination claims is entitled to employee demographic data only "if [the] waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees." 29 U.S.C. § 626(f)(1)(H). Bradford, West, and Wood rely on their own sworn assertions that they were part of a group termination. "In order to satisfy the standard for summary judgment the affiant must ordinarily set forth facts, rather than opinion or conclusions. An affidavit that is essentially conclusory and lacking

12

in specific facts is inadequate to satisfy the movant [or non-movant]'s burden." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002) (internal quotation marks omitted).

We agree with the District Court that the affidavits of Bradford, West, and Wood fail to set forth specific facts necessary to withstand summary judgment. Bradford testified that he "became aware" of similarly situated employees being terminated around the same time as he, but he failed to name any other employees or state how many were terminated. (*See* A. 2000-02.) We reject Bradford's assertion on appeal, unsupported by any case or statute, that "reorganization" is synonymous with "group termination" for the purposes of the OWBPA. Finally, the fact that Bradford was given forty-five days to sign his severance agreement does not establish that he was part of a group termination. Bradford's argument to the contrary is pure speculation.

The affidavits of West and Wood are even more deficient than Bradford's. West alluded to a conversation in which a superior urged West to retire because he "fit the list." (A. 2013.) West also stated that he signed a severance agreement. Similarly, Wood stated that he was given forty-five days to sign a severance agreement. Like Bradford, West and Wood have failed to identify any other employees that were part of the alleged group termination. Their statements that they were part of a group termination are conclusory and self-serving. The District Court did not err when it granted Viacom's motion for summary judgment in the cases of Bradford, West, and Wood.

III.

13

For the foregoing reasons, we will affirm the Judgments of the District Court.